Arty Larnell **HAMLIN,** Plaintiff–Appellant,

v.

Dick **VAUDENBERG,** Captain Hoover, Captain Johnson, et al., Defendants–Appellees.

No. 94–2485.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1996.

Decided Sept. 9, 1996.

---

582

Hoover, Captain Johnson, James Brant, Lieutenant and Jon Eustrom.

Before CUMMINGS, BAUER, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Arty Larnell Hamlin filed a *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging that prison officials failed to abide by state administrative procedures during his prison disciplinary hearing. The district court dismissed Hamlin's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). We affirm.

## BACKGROUND

Hamlin, an inmate at the Green Bay Correctional Institute in Wisconsin, was found guilty, after a disciplinary hearing, of a variety of prison rule violations. Hamlin's punishment included serving eight days of adjustment segregation and 360 days of program segregation which, he asserts, deprived him of 75 days of good time credit. When reaching their decision, the Adjustment Committee ("Committee") relied on confidential witness reports concerning the incident. Hamlin filed suit under 42 U.S.C. § 1983, claiming that the defendants, who are Committee members, never made the required finding that confidentiality of the witnesses' identities was necessary to protect them from a significant threat of bodily harm if their identities were known.[1] He also claimed that the confidential witness information was unreliable and false. Hamlin's complaint alleged that the defendants' acts were in total disregard of the United States Constitution, the Wisconsin Constitution, and the Wisconsin Administrative Code ("Code").

Howard B. Eisenberg (argued), Milwaukee, WI, for plaintiff-appellant.

Richard A. Victor, Eileen Pray (argued), James E. Doyle, Office of Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for defendants-appellees Dick Vaudenberg, Captain

The district court construed Hamlin's *pro se* complaint as raising only a procedural due process claim that the defendants deprived him of liberty by failing to comply with state

---

1. The Wisconsin Administrative Code allows the use of confidential witness statements in prison disciplinary proceedings if the witness refuses to testify and if testifying would pose a significant risk of bodily harm to the witness. A confidential statement provided by the witness will be considered as evidence if it is corroborated by another anonymous statement, by other evidence that substantially corroborates the facts in the confidential statement, or by evidence of a very similar violation by the same person. WIS. ADMIN. CODE § 303.86(4).

procedures. Specifically noting that Hamlin did not "contend that the state regulation is constitutionally infirm," the court found that the defendants had violated state law, but that their actions were "random and unauthorized" and did not give rise to a § 1983 action because Wisconsin provided Hamlin with adequate post-deprivation state remedies.

## ANALYSIS

■■■ We review *de novo* the district court's 12(b)(6) dismissal, and we construe *pro se* complaints liberally. This does not mean that we will fill in all of the blanks in a *pro se* complaint. Where, as in this case, a *pro se* plaintiff is represented by counsel on appeal, we will not permit "creative appellate advocacy" to rewrite a faulty complaint. *Wilson v. Civil Town of Clayton, Ind.,* 839 F.2d 375, 378–79 (7th Cir.1988).

As construed by the district court, Hamlin's case was a simple attack on the prison officials' failure to comply with Wisconsin regulations. This failure allegedly deprived Hamlin of liberty without due process of law. On appeal, Hamlin's appointed counsel has pressed a variety of arguments seeking to shift our focus away from the wording of Hamlin's *pro se* complaint. Hamlin's counsel conceded at oral argument that Hamlin "made a poor allegation" in his complaint. Nevertheless, Hamlin now argues that instead of accepting his factual allegations, the district court should have examined them more closely to see if rejecting them would result in denying the defendants' 12(b)(6) motion. We reject counsel's efforts, even while admiring the zeal of his advocacy.

■■■ A district court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The district court believed that Hamlin's "claim" was that the state officials failed to follow the applicable Wisconsin regulations. The relevant sections of Hamlin's complaint stated:

The defendants relied upon confidential statements without the required finding of significant threat of bodily harm to the witnesses if they wore [sic] to testify contrary to DOC § 303.86(4) of the Wis. Admin.Code. The defendants failed to establish the confidential informant(s) reliability or credibility on the written record.... The identity of confidential informant(s) was not made known to the plaintiff and the information supplied by the informant(s) was unreliable and false.

The defendants as herein alleged have violated plaintiff's due process rights guaranteed by the fifth and fourteenth amendments to the U.S. Constitution and the Wis. Admin. Code.

■■■ Hamlin wishes for us to construe his complaint as raising a claim that the Wisconsin procedures themselves are unconstitutional. If so, Hamlin would have a valid § 1983 action. *See Doherty v. City of Chicago,* 75 F.3d 318, 323 (7th Cir.1996), *quoting Daniels v. Williams,* 474 U.S. 327, 339–40, 106 S.Ct. 677, 678–79, 88 L.Ed.2d 662 (1986) (Stevens J., concurring). "A complaint does not state a valid procedural due process objection, and a valid 1983 claim if it does not include a challenge to the fundamental fairness of the state procedures. If a procedural due process claim lacks a colorable objection to the validity of the State's procedures, no constitutional violation has been alleged." *Id.* Unfortunately for Hamlin, we have scrutinized his complaint and as liberally as we may construe it, we cannot stretch his claim that the individual officers violated Wisconsin law into a claim that Wisconsin law itself is infirm.

In the alternative, Hamlin suggests that the district court should have construed his complaint as raising a claim that the defendants violated federal law and not Wisconsin law. *See Whitford v. Boglino,* 63 F.3d 527, 534–35 (7th Cir.1995). We disagree. As we discussed above, Hamlin's complaint plainly focuses on the defendants' violation of Wisconsin law. We understand that if Hamlin's present counsel had been involved from the get-go, the complaint would be different. However, we will not permit Hamlin's appel-

late counsel to amend the complaint on appeal.

■ Now on to the merits of Hamlin's procedural due process claim. We apply a two-part test in analyzing this claim. *Doherty,* 75 F.3d at 322. First, we determine whether the defendants deprived Hamlin of a protected liberty or property interest. Second, we determine what process was due. *Id.* In addition, if we determine that Hamlin's claim involves "random and unauthorized" conduct by the defendants, then Hamlin must demonstrate that state law remedies are inadequate. *Id.* at 323, *citing Daniels v. Williams,* 474 U.S. at 339–40, 106 S.Ct. at 678–79; *see also Easter House v. Felder,* 910 F.2d 1387, 1405 (7th Cir.1990) (en banc), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991).

■ Hamlin alleges that the defendants' conduct infringed on his liberty because he was subjected to disciplinary segregation and because he lost good time credits. Under *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Due Process Clause is not implicated by a prisoner's placement in segregation because conditions of confinement in segregation are not significantly different from those in the general prison population. In any event, this issue was not factually developed in the district court and is unnecessary to our decision, given that Hamlin sufficiently alleged a protectable liberty interest because his lost good time credits may very well have "affected the duration of his sentence." *Whitford,* 63 F.3d at 532, *quoting, Sandin,* —— U.S. at ——, 115 S.Ct. at 2302.

■ Next, we consider what process Hamlin was due. Due process is a "flexible concept that varies with the particular situation." *Doherty,* 75 F.3d at 323. Here, the process that Hamlin was "due" did not have to occur prior to the deprivation if that deprivation was random and did not flow from authorized conduct. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82

L.Ed.2d 393 (1984). The district court dismissed Hamlin's complaint because it found that the alleged conduct was "random and unauthorized," citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Evaluating conduct to determine whether it is random and unauthorized involves determining whether the conduct was predictable. *Zinermon v. Burch,* 494 U.S. 113, 132, 110 S.Ct. 975, 986–87, 108 L.Ed.2d 100 (1990); *Easter House v. Felder,* 910 F.2d 1387, 1400–01 (7th Cir.1990) (en banc), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991).[2] Predictability is determined by the amount of discretion afforded the state actor, and whether that discretion is uncircumscribed. *Id.* at 1400. If state procedures allow unfettered discretion by state actors, then an abuse of that discretion may be predictable, authorized, and preventable with pre-deprivation process.

■ Under Wisconsin law, the Committee must follow the applicable procedures and lacks discretion in determining how to carry out those procedures. Thus, given the Committee's failure to adhere to the correct procedures, Hamlin's alleged deprivation was in spite rather than because of state procedures. But the question arises whether the alleged conspiracy by prison officials (an intentional act) can be random and unauthorized. In *Easter House* we specifically addressed the conspiracy question. The conspiracy alleged in *Easter House* involved "single instances of improper conduct involving multiple employees engaged in a single scheme for a relatively short period of time" and represented "a random decision of state employees to disregard state policy and procedure which resulted in injuries to [the plaintiff]." *Id.* at 1399. We determined that the state could not predict such intentional, isolated, conduct and therefore could not provide pre-deprivation process. *Id.* Like

---

**2.** Hamlin's suggestion that whether a defendant's conduct is "random and unauthorized" is a question of fact inappropriate for resolution at the 12(b)(6) or summary judgment stage is belied by the myriad cases where we have decided the question as a matter of law. *See, e.g., Lolling v. Patterson,* 966 F.2d 230, 234 (7th Cir.1992); *Wilson v. Civil Town of Clayton, Ind.,* 839 F.2d 375, 383 (7th Cir.1988).

the conspiracy in *Easter House*, the conspiracy alleged in this case is limited to a single scheme accomplished in a short time by employees who, without discretionary power, disregarded state procedures. Because the state cannot predict such lawlessness in order to conduct pre-deprivation proceedings, Hamlin's due process rights have not been violated unless Wisconsin post-deprivation proceedings are inadequate. *See Zinermon,* 494 U.S. at 132, 110 S.Ct. at 986–87; *Cushing v. City of Chicago,* 3 F.3d 1156, 1163 (7th Cir.1993); *Easter House,* 910 F.2d at 1405.

■ The adequacy of Wisconsin post-deprivation remedies is the subject of a federal district court rift in Wisconsin. *Compare, Scott v. McCaughtry,* 810 F.Supp. 1015, 1019–20 (E.D.Wis.1992) (adequate); *Smith v. McCaughtry,* 801 F.Supp. 239, 243–44 (E.D.Wis.1992) (inadequate); *Sturdevant v. Haferman,* 798 F.Supp. 536, 540–41 (E.D.Wis.1992) (inadequate); *Kirby v. O'Keefe,* 1991 WL 476393 (E.D.Wis.1991) (unpublished) (adequate); *Duenas v. Nagle,* 765 F.Supp. 1393, 1400 (W.D.Wis.1991) (adequate). The Wisconsin Supreme Court also considered the adequacy of these alternatives and determined that they fulfill constitutional due process mandates. *Irby v. Macht,* 184 Wis.2d 831, 847–51, 522 N.W.2d 9, 15–17, *cert. denied,* —— U.S. ——, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

A variety of state law remedies are available to prisoners in Hamlin's situation. Wisconsin prisoners may file a complaint with the state Corrections Complaint Examiner. Wis. Admin. Code. §§ DOC 310.04(3), 310.09. In addition, the state law writ of certiorari is available to challenge actions of the disciplinary committee that violate state law. *Duenas v. Nagle,* 765 F.Supp. 1393, 1400 (W.D.Wis.1991). Furthermore, prisoners may be able to bring state law tort claims

against prison officials.[3] *Scott v. McCaughtry,* 810 F.Supp. 1015, 1020 (E.D.Wis.1992).

In *Easter House* we stated that:

[W]e should not reject the application of *Parratt* unless the remedy which an injured party may pursue in state court can readily be characterized as inadequate to the point that it is meaningless or nonexistent and thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment.

910 F.2d at 1406. In this case, the inmate complaint review system and certiorari review allow consideration of alleged due process violations. Both offer relief from liberty deprivations by reinstating prisoner status in the general population (even assuming that disciplinary segregation implicates due process) and expunging the prisoner's disciplinary record. Neither can offer money damages, which would be available in a state law tort action against the prison officials, but these proceedings are neither meaningless nor nonexistent, so they provide all the process that is constitutionally required. We agree with the district court that Wisconsin post-deprivation proceedings are adequate.

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Hamlin's § 1983 claim.

AFFIRMED.

---

3. Hamlin contends that state law tort remedies are unavailable and that even if they were available, prison officials likely would argue that they should receive immunity from damages in any state law tort action. This latter concern is of no moment given our holding in *Easter House* that

"we do not think that otherwise adequate state law remedies will be curtailed by appellants' ability to avail themselves of the immunity which public officials ordinarily enjoy." 910 F.2d at 1405–06.