772 N.W.2d 564 (2009)
278 Neb. 572
SOUTH SIOUX CITY EDUCATION ASSOCIATION, an unincorporated association, appellee,
v.
DAKOTA COUNTY SCHOOL DISTRICT NO. 22-0011, also known as South Sioux City Community Schools, a political subdivision of the State of Nebraska, appellant.
No. S-08-1307.
Supreme Court of Nebraska.
September 25, 2009.
*566 Kelley Baker and Steve Williams, of Harding, Shultz & Downs, P.C., L.L.O., Lincoln, for appellant.
Scott J. Norby, of McGuire & Norby, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
Dakota County School District No. 22-0011, also known as South Sioux City Community Schools (District), appeals from a decision of the Commission of Industrial Relations (CIR). The CIR found that the District's board of education *567 (Board) had committed a prohibited labor practice in its hiring of Bethany Manning as a long-term substitute teacher. The CIR ordered the District to pay Manning backpay in the amount of $6,321.37.

SCOPE OF REVIEW
Any order or decision of the CIR may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. Omaha Police Union Local 101 v. City of Omaha, 276 Neb. 983, 759 N.W.2d 82 (2009).

FACTS
The District employed a teacher for the deaf and hard of hearing from August 2003 until the end of the 2006-07 school year, when she resigned. The District advertised the position and received three applications. Two of the applicants did not have the required certification. Manning had been employed by the District for 4 years as a substitute sign language interpreter and substitute teacher. She had certifications in deaf education, elementary education, and English as a second language. Manning also had a master's degree from the University of Northern Colorado and had previously taught in Colorado, Wyoming, and New Mexico.
Three school administrators were involved in evaluating the applicants: the student services director, the assistant superintendent, and the principal. The student services director conducted the interview with Manning and was not convinced that Manning "would be good for the job, but she was the only certified person that was available." Because there were no other certificated candidates, the student services director and the assistant superintendent decided to offer Manning a position as a long-term substitute.
The student services director sent Manning a letter on June 29, 2007, stating that she would be paid $95 per day for the first 20 days of substitute teaching. On the 21st day, Manning's pay was adjusted on the District's salary schedule to reflect her degree and experience.
During the fall semester of 2007, the District again advertised and solicited applications for the deaf educator position. Manning applied but was not hired. Instead, a previous applicant who, after the initial interview, received her degree and certification was hired for the position as a full-time teacher, with a contract commencing at the beginning of the second semester.
The South Sioux City Education Association (Association) filed a grievance on December 10, 2007, alleging that the District should have issued Manning a probationary teacher's contract as required by law. On December 11, Manning was notified that her services were no longer needed as a long-term substitute, effective December 13. The District denied the grievance, and the Association appealed to the Board, which also denied the grievance. Manning was encouraged to remain on the active substitute list and was retained as a substitute teacher. However, following the initiation of these proceedings, her name was removed from the active substitute list.
The Association commenced an action in the CIR against the District, claiming that it committed a prohibited labor practice. The Association alleged that Manning was *568 a member of the bargaining unit represented by the Association and that she was entitled to be paid a salary and fringe benefits under the collective bargaining agreement (Agreement) between the Board and the Association. It was not disputed that Manning replaced a permanent member of the District's certificated teaching staff who had severed her employment. Manning was not compensated as a member of the bargaining unit represented by the Association. She was compensated as a substitute teacher.
The petition alleged that the District's failure and refusal to compensate Manning as provided by the terms of the Agreement constituted a unilateral deviation in the terms of the Agreement, which deviation violated the integrity of the collective bargaining process and, as such, was a prohibited practice under Neb.Rev.Stat. § 48-824(2)(a) and (f) (Reissue 2004). The Association asked the CIR to (1) find that the District and the Board committed prohibited labor practices, (2) enter a cease and desist order, (3) award Manning backpay, and (4) award the Association costs and attorney fees.
The District's answer alleged that the CIR lacked jurisdiction, that the petition was time barred, and that the petition failed to state a claim upon which relief could be granted.
The parties stipulated to the following facts: (1) The Association is the recognized collective bargaining agent for all nonadministrative certificated employees of the District; (2) the Association is a labor organization as defined by Neb.Rev.Stat. § 48-801(6) (Cum.Supp.2008); (3) the District is a political subdivision of the State of Nebraska and is an employer as the term is defined in § 48-801(4); (4) the parties entered into the Agreement for the 2007-08 school year; (5) Manning commenced her employment with the District on August 8, 2007, which was the first service day for certificated teaching staff for the 2007-08 school year; and (6) the District made no contribution or withholding for Manning's benefit to the Nebraska School Employees Retirement System.
On November 14, 2008, the CIR directed the District to cease and desist from implementing unilateral deviations from the provisions of the Agreement, including its compensation provisions. The CIR also ordered the District to reimburse Manning backpay in the amount of $6,321.37, which was equal to the difference between the amount she received for her bargaining unit duties and the amount to which she would have been entitled under the Agreement. It declined to award attorney fees, finding that the District's actions were not willful or flagrant. The District appeals.

ASSIGNMENTS OF ERROR
The District assigns, summarized and restated, the following errors: The CIR erred in finding that (1) it had subject matter jurisdiction; (2) the factual allegations of the petition stated a claim of a prohibited practice upon which relief could be granted; (3) the claim was not time barred; and (4) Manning was a certificated employee and, therefore, a member of the bargaining unit.

ANALYSIS
In an appeal from a CIR order regarding prohibited practices, an appellate court will affirm a factual finding of the CIR if, considering the whole record, a trier of fact could reasonably conclude that the finding is supported by a preponderance of the competent evidence. See Omaha Police Union Local 101 v. City of Omaha, 274 Neb. 70, 736 N.W.2d 375 (2007). The issues before the CIR were (1) whether the CIR had jurisdiction, (2) *569 whether the District committed a prohibited labor practice in violation of § 48-824 by failing to compensate an employee in accordance with the 2007-08 negotiated Agreement, (3) whether the petition was time barred, and (4) whether Manning was a certificated employee and member of the bargaining unit represented by the Association.

SUBJECT MATTER JURISDICTION
The District first argues that the CIR lacked jurisdiction over the subject matter of the petition and that the CIR lacked the authority to provide the relief requested by the Association. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. Kilgore v. Nebraska Dept. of Health & Human Servs., 277 Neb. 456, 763 N.W.2d 77 (2009). The District asserts that the issues raised by the Association should have been addressed in an action for breach of contract. The District argues that two cases control the issue of jurisdiction: Transport Workers of America v. Transit Auth. of City of Omaha, 205 Neb. 26, 286 N.W.2d 102 (1979), and Central Nebraska Education Association v. Central Technical Community College Area, 6 C.I.R. 237 (1982).
In Transport Workers of America, supra, the union filed a petition against the employer, claiming that the employer had refused to pay for a short-term disability benefit for employees as agreed to in a collective bargaining agreement. The parties stipulated that the only issue was whether employees who were receiving workers' compensation benefits were also entitled to receive short-term disability benefits as provided in the collective bargaining agreement.
The CIR found that the employer had breached its agreement with the union. On appeal, this court addressed whether the CIR had jurisdiction to declare the rights, duties, and obligations of the parties under an existing agreement. We determined that the CIR, as an administrative body performing a legislative function, had "no power or authority other than that specifically conferred by statute or by a construction necessary to accomplish the plain purpose" of the statutes. Id. at 30, 286 N.W.2d at 105.
We found no authority in the state Constitution or statutes which allowed the CIR to hear cases involving an alleged breach of contract and to grant equitable relief such as an accounting. We stated that the statutes governing the CIR provided a forum for public employers and employees to discuss wages, hours, and conditions or terms of employment without interruption of necessary public service. "It is the public interest in having uninterrupted public service that is principally sought to be protected by the creation of the [Industrial Relations] Act and not the creation of a specialty forum for the trying of breach of contract cases by public employees." Transport Workers of America, 205 Neb. at 32, 286 N.W.2d at 106. We reversed the judgment and remanded the cause to the CIR with directions to dismiss the petition.
In Central Nebraska Education Association, supra, the union sought a determination from the CIR whether nurses who were members of the bargaining unit were being paid in accord with the collective bargaining agreement.
The CIR reasoned that pursuant to this court's decision in Transport Workers of America, supra, once a collective bargaining agreement had been reached and a subsequent breach of that agreement was alleged, the parties were required to litigate their disputes concerning alleged breaches of collective bargaining *570 agreements in a court of general jurisdiction. Therefore, an action for breach of contract must be brought in a court of general jurisdiction.
Subsequently, the Legislature passed § 48-824, which states in relevant part:
(1) It is a prohibited practice for any employer, employee, employee organization, or collective-bargaining agent to refuse to negotiate in good faith with respect to mandatory topics of bargaining.
(2) It is a prohibited practice for any employer or the employer's negotiator to:
(a) Interfere with, restrain, or coerce employees in the exercise of rights granted by the Industrial Relations Act;
....
(f) Deny the rights accompanying certification or recognition granted by the Industrial Relations Act[.]
Both Transport Workers of America v. Transit Auth. of City of Omaha, 205 Neb. 26, 286 N.W.2d 102 (1979), and Central Nebraska Education Association v. Central Technical Community College Area, 6 C.I.R. 237 (1982), predated the adoption in 1995 of § 48-824. In Ewing Educ. Ass'n v. Holt Co. School Dist. No. 29, 12 C.I.R. 242 (1996), the CIR addressed the question whether a unilateral change in a condition of employment contained in a collective bargaining agreement was a prohibited labor practice. In that case, the employer changed the terms and conditions of employment by altering the health insurance provided to union members. The union filed a petition with the CIR alleging that the employer's action was a prohibited practice. The employer argued that the question was whether the contract had been breached and whether the CIR had jurisdiction over such an issue.
In response, the CIR stated:
That a unilateral change in a term or condition of employment contained in a collective bargaining agreement may be a breach of contract and actionable as such goes without saying. We will not determine whether a breach of contract has occurred in this case because we have no jurisdiction to do so. The question is whether a unilateral change in a condition of employment contained in a collective bargaining agreement is also a prohibited practice. The [union] argues that NEB. REV. STAT. § 48-824 and § 48-825 ... grant to the [CIR] the specific statutory authority to find and declare what is known elsewhere in labor law as an unfair labor practice. We agree.
Ewing Educ. Ass'n, 12 C.I.R. at 244. The CIR determined that it had jurisdiction over the petition and that the employer had committed a prohibited practice by agreeing to provide a certain level of insurance coverage and then unilaterally changing that provision.
In the present case, the CIR concluded that § 48-824 gave the CIR jurisdiction over prohibited practices. The issue was presented whether the District's actions interfered with, restrained, or coerced employees in the exercise of rights or denied the rights accompanying recognition granted by the Industrial Relations Act, Neb.Rev.Stat. § 48-801 et seq. (Reissue 2004 & Cum.Supp.2008). The CIR determined that the Association's petition alleged facts that were within its jurisdiction. It concluded that the Association had alleged a prohibited practice which impacted the Association. The CIR was not requested to determine whether a breach of contract occurred, but whether the District's acts constituted a prohibited practice. The CIR concluded it had subject matter jurisdiction. We agree.
*571 The Association did not allege that the District breached its contract with Manning but that the District committed a prohibited practice under § 48-824(2)(a) and (f). It claimed that the failure and refusal of the District to compensate Manning was a unilateral deviation of the economic terms of the Agreement. The pretrial report described the first issue as whether the District committed a prohibited labor practice in violation of § 48-824 by failing to compensate Manning in accordance with the 2007-08 negotiated Agreement. Breach of contract was not alleged in the petition or stated as an issue in the pretrial report.
The CIR is not a court and is in fact an administrative body performing a legislative function. Omaha Police Union Local 101 v. City of Omaha, 274 Neb. 70, 736 N.W.2d 375 (2007). It has only those powers delineated by statute, and should exercise that jurisdiction in as narrow a manner as may be necessary. Id. Section 48-823 states that all grants of power, authority, and jurisdiction made under the Industrial Relations Act "shall be liberally construed to effectuate the public policy enunciated in section 48-802."
Industrial disputes involving governmental service "shall be settled by invoking the jurisdiction" of the CIR. § 48-810. "The statutory jurisdiction of the CIR is to settle pending controversies." NAPE v. Game & Parks Comm., 220 Neb. 883, 885, 374 N.W.2d 46, 48 (1985). Sections 48-824 and 48-825 define prohibited practices and set forth the process for filing a complaint alleging a prohibited practice.
The District hired Manning and identified her as a long-term substitute teacher when she was in fact a certificated teacher hired to replace a teacher who had resigned and was not planning to return. Manning was not hired as a substitute for a teacher on leave. At the end of the semester, the District terminated Manning's contract and hired a replacement, who was placed on the salary schedule as a full-time teacher.
The CIR was presented with an industrial dispute involving allegations that the District interfered with the rights granted by the Industrial Relations Act and denied rights accompanying certification. These issues were within the jurisdiction of the CIR, which had the statutory authority to consider whether the District's actions were prohibited practices. The CIR properly exercised jurisdiction over the issues presented to it.

CLAIM FOR RELIEF
The District argues that the petition failed to state a claim upon which relief could be granted. It asserts that the payment of a substitute teacher was not a "focal point" of negotiations or a priority for the Association. See brief for appellant at 13. It claims that the petition did not state a claim for relief unless the prohibited practice was a focal point of negotiations. The District offers no statutory or case law to support this position. And we have found no requirement that in order for an action to rise to the level of a prohibited practice, the issue must be related to a "focal point" of negotiations.
State law makes it a prohibited practice for an employer to interfere with employees' rights under the Industrial Relations Act. See § 48-824(2). The Association demonstrated that the District unilaterally altered the wages of Manning, a bargaining unit member, during the term of the Agreement without first obtaining the consent of the Association.
Manning was a certificated teacher hired to replace a teacher who had left the District's employ with no plans to return. Manning was paid as a substitute teacher, *572 even though she was a probationary employee. The District's employment of Manning as a "long-term substitute" was a prohibited practice, as alleged by the Association. The Association stated a claim for relief. This assignment of error has no merit.

TIMELINESS OF PETITION
Section 48-825(1) provides that a petition must be filed within 180 days after the alleged violation. The District claims that the petition was time barred because it was not filed within 180 days after the alleged violation. The District relies upon Regina Davis, et. al. v. FOP Lodge 8, 15 C.I.R. 1, 15 (2004), in which the CIR noted that the limitation period for a "duty of fair representation" claim begins to run when the cause of action accrues. The District argues that the limitations period began to run when Manning was offered the position as a long-term substitute.
The District claims that Manning was on notice she would not be covered by the contract when she received a letter from the student services director on June 29, 2007. The letter stated that as a long-term substitute, Manning was not contractually bound to the District. The District asserts that if a prohibited practice occurred, it took place on June 29 when Manning received the letter.
The CIR concluded that the cause of action first arose when the District implemented the deviation from the salary schedule and not when Manning was offered the position. The CIR determined that the prohibited practice occurred on September 21, 2007, when Manning's pay was changed. The petition asserted that the alleged prohibited practice was the unilateral deviation from the salary schedule, which first occurred on September 21, 2007. The petition was filed on January 16, 2008. The CIR found that the petition was timely filed.
The District's reliance on Regina Davis, et. al., supra, is misplaced. That case involved a duty of fair representation claim, and in such cases, the limitations period begins to run when the employee knew or should have known of the violation. See, e.g., Howard v. Lockheed-Georgia Co., 742 F.2d 612 (11th Cir.1984); Sixel v. Transportation Communications, 708 F.Supp. 240 (D.Minn.1989).
In cases involving the unilateral modification of economic terms of employment, federal courts have uniformly held that the limitations period for claims alleging an unfair labor practice does not begin to run until the date the union received actual and unequivocal notice of the employer's unilateral modification. See, N.L.R.B. v. Walker Const. Co., 928 F.2d 695 (5th Cir. 1991); N.L.R.B. v. Glover Bottled Gas Corp., 905 F.2d 681 (2d Cir.1990); Esmark, Inc. v. N.L.R.B., 887 F.2d 739 (7th Cir.1989); Teamsters Local Union No. 42 v. N.L.R.B., 825 F.2d 608 (1st Cir.1987).
Since the cause involves a claim alleging a prohibited labor practice, the question is when the Association had notice of the District's unilateral modification of the terms and conditions of Manning's employment. The burden of proof was on the District to demonstrate when the Association had notice of the alleged prohibited practice. See Broekemeier Ford v. Clatanoff, 240 Neb. 265, 481 N.W.2d 416 (1992). The District failed to prove that the Association was aware of the alleged prohibited practice prior to the filing of a grievance on December 10, 2007. The 180-day statute of limitations began on December 10, and the filing of the petition on January 16, 2008, was timely.
The limitations period began on the date the Association knew or should have known of the alleged prohibited practice. The CIR used September 21, 2007, as the *573 beginning of the limitations period, finding that the change in terms of Manning's contract did not occur until she was paid on that date. Even if September 21 is used as the starting date for the limitations period, the petition was timely because September 21 is within the 180-day time period preceding the filing of the petition. The petition was timely filed, and this assignment of error has no merit.

CERTIFICATED EMPLOYEE AND MEMBER OF BARGAINING UNIT
The District argues that Manning was not a member of the bargaining unit, because she was hired as a long-term substitute teacher and not as a regular certificated employee.
The District relies on the statutory definition of a certificated employee to argue that substitute teachers are not certificated. This reliance is without merit. Neb. Rev.Stat. § 79-824(1) (Reissue 2008) provides that certificated employees are all teachers and administrators as defined in Neb.Rev.Stat. § 79-101 (Reissue 2008), other than substitute teachers. Section 79-101(9) defines a teacher as "any certified employee who is regularly employed for the instruction of pupils in the public schools." Neb.Rev.Stat. § 79-902(38) (Reissue 2008), which provides definitions for the school employees' retirement systems, states that a "[s]ubstitute employee" is "a person hired by a public school as a temporary employee on an intermittent basis to assume the duties of regular employees due to the temporary absence of the regular employees." Manning was not hired due to the temporary absence of a regular employee.
The CIR found that in hiring Manning, the District deviated from its previous practices. Administrators who testified could not recall an instance in the previous 24 years that the District had hired a teacher at the beginning of the school year as a long-term substitute when the teacher was not actually fulfilling the duties of another staff member who was on a leave of absence. Of the 34 new teachers hired for the 2007-08 school year, Manning was the only teacher not issued a teacher's contract. All other new teachers were compensated based on the Agreement. Manning did not receive fringe benefits, life insurance, personal leave benefits, or sick leave that was provided to the other teachers. The District attempted to treat her as a substitute teacher even though she was not taking the place of a teacher who planned to return.
The CIR correctly determined that Manning was a member of the bargaining unit. As a member of the bargaining unit, she was entitled to be paid under the salary schedule, and thus, paying her on a different basis was a unilateral deviation from the economic terms in the Agreement.
A teacher who is hired to fill an open position is not a substitute employee. The District therefore arbitrarily designated Manning as a long-term substitute. To allow the District to designate her as such would, as the CIR so determined, allow the District to "unilaterally control the composition of the bargaining unit."
We also find no merit to the argument that Manning was employed "less than one-half time" because she served only 83.5 days out of a total of 188 teacher service days in 2007-08. See brief for appellant at 16. Manning was not hired to assume the duties of an employee who was temporarily absent. Her predecessor resigned from the position. The District unilaterally decided to end Manning's employment in December after she taught nearly every day of the first semester. The authority of the Association and its rights would be undermined if the District were allowed to unilaterally designate probationary *574 teachers as long-term substitutes. The District's designation of Manning as a long-term substitute had the effect of unilaterally removing her from the bargaining unit.
The CIR correctly concluded that Manning was not a long-term substitute, but performed as a probationary certificated employee and was therefore a member of the bargaining unit. The act of unilaterally paying Manning on a basis other than as provided in the Agreement and without bargaining with the Association about such a change was a violation of § 48-824.
Any order or decision of the CIR may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. Omaha Police Union Local 101 v. City of Omaha, 276 Neb. 983, 759 N.W.2d 82 (2009).
The CIR acted within its powers when it exercised jurisdiction to determine whether the District had committed a prohibited practice. The CIR found that the District had implemented unilateral deviations from the Agreement, including compensation provisions. It ordered the District to reimburse Manning backpay equal to the difference between the amount received for her bargaining unit duties and the amount to which she would have been entitled under the Agreement. The CIR's order was not procured by fraud and is not contrary to law. The order of the CIR is supported by a preponderance of the evidence on the record.

CONCLUSION
The District unilaterally changed the terms of the Agreement, which is a prohibited practice. Manning, a member of the Association, was a probationary teacher who was not compensated properly under the Agreement. The CIR had jurisdiction to hear the controversy, and the petition was not time barred. The judgment of the CIR is affirmed.
AFFIRMED.