782 N.W.2d 1 (2010)
279 Neb. 740
Bethany MANNING, appellee,
v.
DAKOTA COUNTY SCHOOL DISTRICT No. 22-0011, also known as South Sioux City Community Schools, a political subdivision of the State of Nebraska, appellant.
No. S-09-714.
Supreme Court of Nebraska.
April 23, 2010.
*4 Kelley Baker, Lincoln, and Steve Williams, of Harding & Schultz, P.C., L.L.O., for appellant.
Scott J. Norby, of McGuire & Norby, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
The Dakota County School District No. 22-0011 (the school district) appeals from a judgment against it in an action brought by Bethany Manning for backpay, reinstatement of employment, and attorney fees and costs. The school district had hired Manning to fill a vacancy for a full-time teaching position, but because of concerns about her qualifications, the school district designated her as a "long-term substitute." This designation deprived Manning of any contractual rights under the collective bargaining agreement and statutory rights granted to "probationary certificated employees" under the Nebraska tenure statutes.[1] Manning's employment was eventually terminated without notice and hearing as provided for under § 79-828 for probationary certificated employees.

BACKGROUND
The facts leading up to the current appeal are largely undisputed and can be found in the related opinion of South Sioux City Ed. Assn. v. Dakota Cty. Sch. Dist.[2] When a full-time teacher for the *5 school district resigned after several years of service, the school district needed to fill the vacancy before the start of the 2007-08 school year. The position involved teaching students who are deaf or hard of hearing. Three people were involved in the hiring process: the student services director, the assistant superintendent, and the principal. Three people applied for the job, but only Manning had the required qualifications.
Despite Manning's qualifications, the student services director was not convinced that Manning was a good fit for the teaching position. Because of these doubts, the student services director and the assistant superintendent decided to offer Manning the position as a "long-term substitute." They believed that as a "long-term substitute," Manning did not fall under the terms of the teachers' collective bargaining agreement with the school district or under the statutory protections granted to certificated employees.[3] Thus, the school district could continue to look for better candidates for the job and replace Manning in the manner and at the time it saw fit.
The student services director offered Manning a reduced "substitute teacher" salary for the first 20 days and a standard salary based on her education level and years of experience thereafter. In an e-mail, the assistant superintendent of the school district told Manning she would not be entitled to sick leave or any of the other benefits provided to teachers who are covered by the collective bargaining agreement. And at the end of the first semester, the school district would reopen interviews for the position and Manning could "reapply" at that time. No formal contract was presented to Manning or approved by the school board.
Manning accepted the offer and began her employment at the beginning of the school year. At the end of the first semester, she reapplied for the position. By that time, however, one of the previously unsuccessful applicants had acquired the required certification to also be qualified for the job. On December 11, 2007, the student services director informed Manning that the school district had found someone else to fill the position and that the last day her services would be required was December 13.
The South Sioux City Education Association initiated a grievance against the school district, alleging that Manning was a "full-time certificated teacher" and demanding that she be issued a standard contract and be prospectively and retroactively granted all the economic and fringe benefits of the collective bargaining agreement.
The South Sioux City Education Association brought an action before the Commission of Industrial Relations (CIR), which found that the act of treating Manning as a substitute teacher rather than as a certificated employee was a prohibited practice under Neb.Rev.Stat. § 48-824(2)(a) and (f) (Reissue 2004). The CIR concluded that Manning was a "certificated employee" as defined by § 79-824 and was therefore covered by the collective bargaining agreement.
Section 79-824 states in relevant part that a certificated employee means and includes all teachers, "other than substitute teachers, who are employed one-half time or more."[4] A "[p]robationary certificated employee" is a teacher who has served under a contract with the school district for less than 3 successive school *6 years.[5] The CIR reasoned that someone cannot "substitute" for an open position, i.e., where the previous teacher's absence is permanent. It also rejected the school district's contention that Manning was only "one-half time," because when it fired her, she happened to have served only 83.5 service days out of a total of 188 teacher service days in 2007-08. The CIR reasoned that it undermined teachers' statutory rights to allow the school district to unilaterally convert otherwise probationary certificated teachers into substitutes by not allowing them to work at least half the year. The CIR awarded Manning backpay and the value of her benefits through December 13, 2007, and it ordered the school district to cease and desist from implementing unilateral deviations from the collective bargaining agreement.
The school district appealed the CIR's order, and, in South Sioux City Ed. Assn. v. Dakota Cty. Sch. Dist., we affirmed.[6] We agreed that Manning was a probationary certificated employee as defined by Neb.Rev.Stat. § 79-101(9) (Reissue 2008) and § 79-824. We agreed generally with the reasoning of the CIR. We also explained that Manning was not a "`[s]ubstitute employee'" as defined by Neb.Rev. Stat. § 79-902(38) (Reissue 2008), because she was not hired due to the "temporary absence of a regular employee."[7]
During the pendency of the CIR action, Manning brought this action, in a "Complaint for Declaratory Relief," against the school district in the district court for Dakota County. Manning alleged that she was a probationary certificated employee under § 79-824(1) and (3) and that as a result, she was entitled to a teacher's contract under Neb.Rev.Stat. § 79-817 (Reissue 2008); salary and benefits as negotiated by the collective bargaining agreement; and notice and hearing before termination, as provided by § 79-828. Manning asked for reinstatement with a written contract until such time as the school district followed proper notice and hearing procedures to terminate her employment. Manning also asked for backpay and consequential damages.
Manning requested attorney fees and costs pursuant to 42 U.S.C. § 1988 (2006). Manning alleged that the school district violated her federal due process rights by canceling her employment without notice and hearing.
The district court issued an order in favor of Manning on all counts. The court granted Manning reinstatement until such time as the school district followed correct statutory procedures for her termination of employment, and it ordered that the school district provide her with a written teacher's contract. The court granted Manning $6,321.37 in backpay and benefits for the first semester, $27,507.38 in backpay from December 14, 2007, to May 23, 2008, and $53,396 for what she would have earned in the 2008-09 school year. After Manning submitted an application and affidavit demonstrating attorney fees and costs, the district court granted her $25,872.75 in attorney fees and $841.38 in costs pursuant to § 1988. The school district appeals.

ASSIGNMENTS OF ERROR
The school district asserts that the district court erred when it determined that (1) Manning was a probationary certificated employee, (2) Manning had a property interest in her employment position, (3) *7 Manning's employment continued with the school district, (4) the school district violated § 79-817 and Manning was entitled to a written contract until lawfully terminated, (5) the school district violated Manning's due process rights and was entitled to notice and hearing under § 79-828, (6) Manning was entitled to the economic terms and conditions of the collective bargaining agreement, (7) Manning was entitled to backpay, (8) Manning was entitled to costs and attorney fees under § 1988, and (9) attorney fees were fair and reasonable.

STANDARD OF REVIEW
When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.[8]

ANALYSIS

CERTIFICATED EMPLOYEE
We have already concluded in South Sioux City Ed. Assn. v. Dakota Cty. Sch. Dist. that Manning was a probationary certificated employee.[9] None of the arguments presented by the school district in this appeal dissuade us from that conclusion. As a probationary certificated employee, Manning was entitled by statute to an employment contract, certain benefits under the collective bargaining agreement, and notice and hearing before termination.[10] The school district's assignments of error relating to the district court's reinstatement of Manning's employment, with a contract, and the award of backpay and benefits, are all premised on its continuing argument that Manning was not a probationary certificated employee. Having concluded otherwise, we find no merit to those assignments of error.

ATTORNEY FEES AND COSTS
We next consider the school district's assignments of error relating to the award of attorney fees and costs. As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[11] The district court granted Manning attorney fees under § 1988, the Civil Rights Attorney's Fees Awards Act of 1976.
Section 1988 provides that in "any action or proceeding to enforce a provision of [§ ] 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Manning argues that she presented an action to enforce civil rights pursuant to 42 U.S.C. § 1983 (2006). Particularly, she argues that she presented an action for deprivation of her property interest in continued employment without procedural due process of law.
In enacting § 1988, Congress was more concerned with the substance of plaintiffs' claims than with the form in which those claims are presented.[12] Furthermore, the fact that a party prevails on a ground other than § 1983 does not preclude an award of attorney fees under § 1988. "If § 1983 would have been an appropriate basis for relief, then [the *8 plaintiff in such action] is entitled to attorney's fees under § 1988...."[13] Thus, when the claim upon which a plaintiff actually prevails is accompanied by a "substantial," though undecided, § 1983 claim arising from the same nucleus of facts, a fee award is appropriate.[14]
It is unclear to what extent, if at all, the district court based its underlying award on § 1983, as opposed to statutory and contractual rights. Regardless, in order to determine whether the district court's grant of attorney fees was proper, we consider whether Manning presented a "substantial" § 1983 claim. A litigant cannot obtain attorney fees simply by an incantation of § 1983.[15]
At a minimum, a § 1983 claim cannot be considered "substantial" if it is foreclosed by governing law.[16] In Francis v. City of Columbus,[17] for example, we concluded that attorney fees under § 1988 were unavailable for the plaintiff's pending claims under state law because the § 1983 action could not succeed. The action involved the Tax Injunction Act, which prohibited § 1983 actions for relief from state tax when there is an adequate state remedy. We concluded that there were adequate state remedies. In a similar case before the U.S. Supreme Court, National Private Truck Council, Inc. v. Oklahoma Tax Com'n,[18] the Court explained that when no relief can be awarded pursuant to § 1983, no attorney fees can be awarded under § 1988.
For purposes of this opinion, we will assume without deciding that Manning had a property interest in her continued employment so as to implicate the Due Process Clause. But even so, we conclude that Manning did not have an actionable § 1983 claim. Section 1983 provides, as relevant:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
Two related doctrines preclude Manning's claim under § 1983. First, under the U.S. Supreme Court's interpretation of § 1983 as it pertains to municipalities and the doctrine of respondeat superior, a school district is not liable for the acts of its employees when those acts do not represent the official policy of the school district. Second, under what is known as the Parratt/Hudson doctrine,[19] there is no federal due process violation under color of state law when the deprivation was the result of "random and unauthorized" *9 acts by state employees and the State provides adequate postdeprivation remedies.

MUNICIPAL RESPONSIBILITY FOR ACTS OF ITS EMPLOYEES
The U.S. Supreme Court originally held that municipalities were not "persons" under § 1983.[20] It has since overruled this decision and has held that municipalities and other local governmental units, such as school boards, are included among those "persons" to whom § 1983 applies.[21] However, the Court has retained significant limitations to a municipality's liability for the acts of its employees in a § 1983 action. Focusing on the causal language of § 1983, as well as legislative history indicating that Congress doubted its power to oblige municipalities to control the conduct of others, the U.S. Supreme Court concluded that § 1983 did not mean to incorporate doctrines of vicarious liability.[22] The Court held that respondeat superior is an insufficient basis for establishing liability and that municipal liability under § 1983 is limited to actions for which the municipality is actually responsible.[23]
A rigorous standard of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees.[24] The U.S. Supreme Court elaborated that Congress did not intend municipalities to be held liable unless action pursuant to "official municipal policy of some nature caused a constitutional tort."[25] In other words, a municipality is liable only when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.[26]
There is no evidence in this case that it was the official policy of the school district to create "long-term substitutes" in an attempt to circumvent the Nebraska tenure statutes. Policy is made when a decisionmaker, possessing final authority to establish municipal policy with respect to the action, issues an official proclamation, policy, or edict.[27] "The fact that a particular official  even a policymaking official  has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."[28] Rather, "municipal liability under § 1983 attaches where  and only where  a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing *10 final policy with respect to the subject matter in question."[29]
In a footnote in the U.S. Supreme Court's opinion in Pembaur v. City of Cincinnati,[30] the Court illustrated that a county sheriff's decision to hire or fire an employee would not subject the municipality to § 1983 liability, even if the municipality had left to the sheriff the discretion to hire and fire employees and the sheriff had exercised that discretion in an unconstitutional manner. The municipality would be liable under § 1983, the Court explained, only if the municipal board had delegated its power to establish final employment policy to the sheriff.[31]
Likewise, here, while the student services director, the assistant superintendent, and the principal may have had the discretion to make hiring decisions, they do not appear to have the authority to establish final policy for the school district.
Nor is there evidence that it was the custom of the school district to hire as "long-term substitutes" employees who really were "probationary certificated employees," and then discharge them without notice or hearing. To the contrary, the school superintendent testified that in his 20 years of experience, he had never hired an employee in this manner. A custom is proved by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well settled and permanent as virtually to constitute law.[32]
Thus, the nucleus of facts here does not present a case in which the municipality should be held responsible, under § 1983, for the actions of those who allegedly deprived Manning of her due process rights. This is not a case where "official municipal policy of some nature caused a constitutional tort."[33] Therefore, § 1983 would not have been an appropriate basis for relief, and attorney fees under § 1988 are not recoverable.

PARRATT/HUDSON DOCTRINE
Relatedly, because the acts of the school administrators toward Manning were a particular, unauthorized response to their unease with Manning's candidacy for the position, the State adequately protected Manning's federal due process rights by providing her with state postdeprivation remedies. In a § 1983 claim, the procedural process due to a person who has a property interest in continued employment is based in federal constitutional safeguards. There is not a violation of due process every time a government entity violates its own rules.[34] Moreover, a constitutional deprivation of procedural due process actionable under § 1983 "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."[35] This is distinguishable from a violation of substantive constitutional rights, which occurs *11 at the moment the harm occurs.[36] Procedural due process is flexible and calls for such protections as the particular situation demands.[37] Where a state must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirement of the Due Process Clause.[38]
Under the Parratt/Hudson doctrine, the U.S. Supreme Court has held that in the case of "random and unauthorized" deprivations by state employees, due process does not require a predeprivation hearing; rather, postdeprivation state tort remedies are sufficient.[39] The Court has explained that because such misconduct is inherently unpredictable, the state's obligation under the Due Process Clause is to provide sufficient remedies after its occurrence, rather than to prevent it from happening.[40] Whether the individual employee, as opposed to the State, can foresee the deprivation and provide a predeprivation process is of no consequence. "The controlling inquiry is solely whether the state is in a position to provide for predeprivation process."[41]
Generally, conduct that is contrary to law is considered random and unauthorized.[42] The exception, not applicable here, is that some courts have found deprivations, when effected by high-level decisionmakers, cannot be considered "random and unauthorized."[43] Furthermore, if a state procedure allows unfettered discretion by a state actor, then an abuse of that discretion may be predictable, authorized, and preventable with a predeprivation process.[44]
In Clark v. Kansas City Missouri School Dist.,[45] a public school teacher brought a § 1983 action alleging that the principal and the district superintendent deprived her of property without due process of law. Relying on the Parratt/Hudson doctrine, the court noted that the teacher did not challenge the procedures established by the school district, but challenged the acts of certain employees. And the teacher did not present evidence that the employees acted pursuant to any established district procedure. Their actions were, instead, random and unauthorized. Because the State provided adequate common-law remedies for the deprivation, the court concluded that her due process claim failed as a matter of law. Similar cases brought under § 1983 by teachers alleging that their termination, demotion, or involuntary medical leave violated procedural due process have failed because the actions were considered random and unauthorized and there was an adequate state remedy.[46]
*12 Manning does not challenge the Nebraska tenure statutes, but asserts that the school administrators acted in violation of those statutes. Not only were the school administrators' actions unauthorized, but, as already discussed, there is no evidence that this was an ongoing custom such that the State should have interceded to prevent it beyond the statutory mandates upon which Manning relies. And certainly, given the strictures of the tenure statutes, this is not a case where the district employees were granted unfettered discretion. The adequacy of the state postdeprivation remedies is not questioned, and Manning has demonstrated their efficacy through this suit. Although state remedies may not provide all the relief which may have been available under § 1983, such as recovery of attorney fees, that does not mean that the state remedies are not adequate to satisfy the requirements of due process.[47]
In order to obtain attorney fees under § 1988, it was Manning's burden to demonstrate at least a "substantial" § 1983 claim. She has failed to do so. We find merit to the school district's assignments of error pertaining to the award of attorney fees and costs, and we reverse that portion of the lower court's judgment. We need not address whether the fees were reasonable.

CONCLUSION
We affirm the judgment awarding Manning reinstatement, backpay, and benefits. We reverse the award of attorney fees and costs.
AFFIRMED IN PART, AND IN PART REVERSED.
NOTES
[1] Neb.Rev.Stat. §§ 79-824 through 79-845 (Reissue 2008).
[2] South Sioux City Ed. Assn. v. Dakota Cty. Sch. Dist., 278 Neb. 572, 772 N.W.2d 564 (2009).
[3] See, e.g., §§ 79-824 through 79-845.
[4] § 79-824(1).
[5] § 79-824(3).
[6] South Sioux City Ed. Assn. v. Dakota Cty. Sch. Dist., supra note 2.
[7] Id. at 583, 772 N.W.2d at 573.
[8] State v. Scheffert, 279 Neb. 479, 778 N.W.2d 733 (2010).
[9] South Sioux City Ed. Assn. v. Dakota Cty. Sch. Dist., supra note 2.
[10] See §§ 79-824 through 79-845.
[11] Simon v. City of Omaha, 267 Neb. 718, 677 N.W.2d 129 (2004).
[12] Goss v. City of Little Rock, Ark., 151 F.3d 861 (8th Cir.1998).
[13] Id. at 866; Robinson v. City of Omaha, 242 Neb. 408, 495 N.W.2d 281 (1993).
[14] Maher v. Gagne, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).
[15] Smith v. Cumberland School Committee, 703 F.2d 4 (1st Cir.1983).
[16] See Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).
[17] Francis v. City of Columbus, 267 Neb. 553, 676 N.W.2d 346 (2004).
[18] National Private Truck Council, Inc. v. Oklahoma Tax Com'n, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995).
[19] Parratt v. Taylor, 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Accord Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).
[20] Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).
[21] Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
[22] Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); Monroe v. Pape, supra note 20.
[23] Pembaur v. City of Cincinnati, supra note 22.
[24] Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
[25] Monell v. New York City Dept. of Social Services, supra, 436 U.S. at 691 note 21, 98 S.Ct. 2018.
[26] Monell v. New York City Dept. of Social Services, supra note 21; Rush v. Wilder, 263 Neb. 910, 644 N.W.2d 151 (2002).
[27] Pembaur v. City of Cincinnati, supra note 22.
[28] Id., 475 U.S. at 481-82, 106 S.Ct. 1292.
[29] Id., 475 U.S. at 483, 106 S.Ct. 1292.
[30] Pembaur v. City of Cincinnati, supra note 22.
[31] Id.
[32] Monell v. New York City Dept. of Social Services, supra note 21; Fletcher v. O'Donnell, 867 F.2d 791 (3d Cir.1989).
[33] Monell v. New York City Dept. of Social Services, supra, 436 U.S. at 691, note 21, 98 S.Ct. 2018.
[34] Franceski v. Plaquemines Parish School Bd., 772 F.2d 197 (5th Cir.1985). See, also, e.g., Levenstein v. Salafsky, 164 F.3d 345 (7th Cir.1998); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504 (10th Cir.1998).
[35] Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).
[36] See, Halverson v. Skagit County, 42 F.3d 1257 (9th Cir.1994); Bakken v. City of Council Bluffs, 470 N.W.2d 34 (Iowa 1991).
[37] Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
[38] Gilbert v. Homar, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).
[39] Parratt v. Taylor, supra, 451 U.S. at 541, note 19, 101 S.Ct. 1908. Accord Hudson v. Palmer, supra note 19.
[40] Hudson v. Palmer, supra note 19.
[41] Id., 468 U.S. at 534, 104 S.Ct. 3194.
[42] Hamlin v. Vaudenberg, 95 F.3d 580 (7th Cir.1996).
[43] Dwyer v. Regan, 777 F.2d 825 (2d Cir. 1985).
[44] See, Zinermon v. Burch, supra note 35; Hamlin v. Vaudenberg, supra note 42.
[45] Clark v. Kansas City Missouri School Dist., 375 F.3d 698 (8th Cir.2004).
[46] Jefferson v. Jefferson Co. Pub. School Sys., 360 F.3d 583 (6th Cir.2004); Hartwick v. Bd. of Tr. of Johnson Cty. Com. Col., 782 F.Supp. 1507 (D.Kan. 1992); Setchel v. Hart County School Dist., No. 3:09-CV-92, 2009 WL 3757464 (M.D.Ga. Nov. 6, 2009); Anderson v. Bd. of Educ. of City of Chicago, No. 03 C 7871, 2004 WL 1157824 (N.D.Ill. May 24, 2004).
[47] Parratt v. Taylor, supra note 19.