JESSE CHAPPELL, APPELLEE, V. LANCASTER COUNTY, APPELLANT.

FILED APRIL 24, 1909.    No. 15,667.

1. **Statutes: CONSTRUCTION.** A statute should be construed "in the light of all general laws upon the same subject in force at the time of its enactment."

2. **Insane Persons: INQUEST: FEES OF JURORS.** The fees of a juror called to serve as such in an insanity inquest in pursuance of the provisions of sections 454, 551 and 552 of the criminal code must be paid by the county in which the penitentiary is located.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*F. M. Tyrrell* and *Charles E. Matson,* for appellant.

*Grant G. Martin, F. G. Hamer* and *L. H. Blackledge,* contra.

DEAN, J.

This is an appeal from Lancaster county to determine the right of a juror to fees in a proceeding under sections 454, 551 and 552 of the criminal code. Jesse Chappell, plaintiff and appellee, filed his claim with the county board of Lancaster county for services as such juror. The claim was rejected, and he appealed to the district court. A demurrer was there filed to his petition, and was over-

ruled, and, the defendant electing to stand thereon, judgment was rendered against the county, from which it appeals.

The plaintiff's petition alleges, in substance, that one Frank Barker was convicted in Webster county of murder in the first degree and sentenced to capital punishment; that he was thereafter in pursuance of such conviction confined in the penitentiary under sentence of death awaiting execution; that his attorneys procured a suspension of the sentence pending an inquiry as to his sanity; that on July 9, 1907, the plaintiff was summoned by the warden of the penitentiary under an order issued by Honorable Lincoln Frost, one of the judges of the district court for Lancaster county, to appear in one of the district courtrooms of said county before the judge to serve as a juror in the insanity proceedings, and, appearing in obedience thereto, he was accepted as such juror and served in that capacity with eleven others for six days, when he was discharged.

Sections 454, 551 and 552 of the criminal code are as follows: "Section 454. A person that becomes lunatic or insane after the commission of a crime or misdemeanor ought not to be tried for the offense during the continuance of the lunacy or insanity. If, after the verdict of guilty, and before judgment pronounced, such person becomes lunatic or insane, then no judgment shall be given while such lunacy or insanity shall continue. And if, after judgment and before execution of the sentence, such person shall become lunatic or insane, then, in case the punishment be capital, the execution thereof shall be stayed until the recovery of said person from the insanity or lunacy. In all such cases it shall be the duty of the court to impanel a jury to try the question whether the accused be, at the time of impaneling, insane or lunatic."

"Section 551. If any convict under sentence of death shall appear to be insane, the warden shall forthwith give notice thereof to a judge of the district court of the county in which the penitentiary is situated, and shall

summon a jury of twelve impartial electors of the county, to inquire into such insanity at a time and place to be fixed by the judge, and shall give immediate notice thereof to the attorney general of the state and the county attorney of the county in which the conviction was had."

"Section 552. The judge, clerk of the court, and attorney general or his deputy, shall attend the inquiry, witnesses may be produced and examined before the jury. The finding shall be in writing and signed by the jury. If it be found that the convict is insane, the judge shall suspend the execution of the convict until the warden shall receive a warrant from the governor of the state directing such execution. The finding of the jury and order of the judge, certified by the judge and clerk, shall be transmitted to the clerk of the district court of the county in which the conviction was had, and shall be by such clerk entered upon the journal of the court."

The county attorney argues that the defendant county is not liable to the plaintiff because his services were rendered in a special proceeding for which no fee is fixed, and because the insanity proceeding was had before a judge as distinguished from a court, and that such proceeding may be had in vacation as well as in term time, and because the warden, and not the sheriff, summoned the jury. It is pointed out that the statute makes no provision in the proceeding under consideration for peremptory challenges, nor for the attendance of the sheriff and the clerk of the court. We have examined the record carefully and the law applicable thereto, and conclude that the objections of the county are not well taken, and that the judgment of the district court ought to be affirmed. By whatever name the proceeding in question may be called, the fact remains that it is in aid of the criminal procedure of the state and has been recognized as such by this court. *Barker v. State,* 75 Neb. 289; *State v. Barker,* 79 Neb. 361.

It is immaterial whether the proceedings are special or otherwise. The plaintiff served as a juror in pursuance

of a compulsory writ issued by one of the judges of the district court in a proceeding wherein the formalities of district court practice and procedure were generally observed, and, having performed the service, he is entitled to his fee. "Grand and petit jurors shall receive for their services two dollars for each day employed in the discharge of their duties." Comp. St. 1907, ch. 28, sec. 15. It will be observed that the fee of the petit juror is fixed at $2, regardless of whether such service is rendered in a civil or criminal case. Plaintiff's counsel point out that section 537 of the criminal code fixes the liability upon the county to pay the fees of a juror in a criminal case as other costs are paid, but that there is no statute which requires the county to pay such juror's fee in a civil case; and they argue that, after a practice by the county of paying for such service in civil cases that has prevailed ever since the organization of the state, it would not be seriously contended that, because of this omission by the legislature, therefore the county is absolved from the payment of fees to a juror called by compulsory process and compelled to serve in a civil case regularly tried in the district court. It would seem that if a juror's fee in a civil case may properly be paid by the county in the absence of a statute in the civil code directly providing for such payment, a juror ought to fare as well who serves under a compulsory process in pursuance of the provisions of the criminal code, wherein are found statutes providing generally for the payment of costs by the county in criminal cases. Sections 536 and 537 of the criminal code are sufficiently general in their scope to cover the proceedings in which were rendered the services of the plaintiff and to compel payment therefor by the defendant county. In the case at bar, the proceeding in which the plaintiff served as a juror having been brought under the provisions of the criminal statutes, it follows that the general provisions of the criminal code for the payment of costs arising out of criminal cases are applicable, and such costs, including juror's fees, should be

paid the same as in an ordinary criminal case. "It may safely be laid down as a rule of statutory construction that, where there is a general law prescribing and defining the powers, duties, and mode of procedure of a public board, and a special law is passed relating to a particular matter, coming within the general scope of the powers of the board, the two laws are to be read together, and the general law is applicable to the particular matter, except in so far as provision is made in the special law, conferring powers or prescribing duties or modes of procedure, differing from those mentioned in the general law." *Talcott v. Harbor Commissioners,* 53 Cal. 199. In the construction of statutes "every statute must be read in the light of the general laws upon the same subject in force at the time of its enactment." *United States v Trans-Missouri Freight Ass'n,* 58 Fed. 58. It is not probable a similar question to the one involved in this case will again arise, because the recent legislature has wisely provided for the payment of such costs and expenses as are incurred in such proceedings as are under consideration in this opinion by the county where the convicted person is tried, convicted and sentenced.

The judgment of the district court is right, and is in all things

AFFIRMED.