ERNEST BRANZ, APPELLANT, v. RAY R. HUTCHINSON ET AL., APPELLEES.

FILED APRIL 11, 1935. No. 29179.

*C. E. Sandall* and *Charles F. Stroman,* for appellant.

*Kirkpatrick, Good & Dougherty, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ.

GOSS, C. J.

October 30, 1926, Ernest Branz, plaintiff and appellant, leased a 200-acre farm to Ray R. Hutchinson from November 10, 1926, to March 1, 1932. The written lease was not recorded in the office of the county clerk until February 9, 1931. By its terms the tenant was to pay a cash rent of $150 each year for the pasture and was to deliver the landlord's two-fifths of the grain at market at Gresham, free of expense to the landlord. The lease was complied with until the fall of 1931 when the tenant failed to pay the cash rent for that last year and failed and refused to gather some of the landlord's share and to deliver more corn belonging to the landlord. The landlord gathered and delivered said corn. The tenant in December, 1931, and in March, 1932, sold and delivered to two grain companies in Gresham corn raised on the land in 1931, valued at $199.85. When a controversy arose as to the ownership of these products, the grain companies paid the money into court where, by stipulation of the parties, it abides the result of this suit.

On June 19, 1931, Hutchinson gave to Blanche Davidson his note for $500 and, to secure it, gave her his chattel mortgage upon the then growing crops, raised on the leased premises, which mortgage was duly recorded.

The lease from Branz to Hutchinson expressly provided that the tenant should "secure the performance of the terms and conditions of this lease on his part by giving to the first party on demand a chattel mortgage upon all or any part of the crops growing or gathered on said premises during said term." However, the evidence shows (by stipulation) that the landlord never made any demand for such a mortgage. He had no chattel mortgage.

This suit is a controversy between the landlord, Branz, and the chattel mortgagee, Davidson, for priority of lien against the fund in court. The district court gave judgment to the chattel mortgagee. The landlord appealed. In effect Hutchinson is out of the picture. The cause was tried to the court without a jury.

Section 36-301, Comp. St. 1929, as theretofore existing, had been amended by the legislature in 1927. Laws, 1927, ch. 36. The amendment inserted into the section as theretofore existing this provision: "Provided, that the filing of a lease containing an agreement for the execution of a chattel mortgage, or, therein constituting a chattel mortgage, on unplanted crops shall constitute notice of such an obligation and lien and protect the lessor against chattel mortgages given to other creditors by the lessee."

The question for determination in this case is the proper interpretation of chapter 36, Laws 1927, and the application thereof to the facts in this controversy. The act was entitled "An Act to amend section 2550, Compiled Statutes of Nebraska for 1922, relating to chattel mortgages; providing that the recording of a lease containing an agreement for a chattel mortgage on unplanted crops shall constitute notice; and to repeal said original section." It was passed and approved, without the emergency clause, on April 12, 1927, and became effective July 23, 1927. Its sole effect was to add to the section amended (now section 36-301, Comp. St. 1929) the words contained in the proviso hereinbefore quoted. We assume that the addition which the legislature endeavored to

provide was limited to "protect the lessor against chattel mortgages given to other creditors by the lessee." The amendment relates only to the effect of filing of chattel mortgages and leases as notice. It does not purport to cover questions relating to the validity of the instruments between the parties.

In *Brown v. Neilson*, 61 Neb. 765, we held that a lien reserved by a lease, in the nature of a chattel mortgage, on unplanted crops, "is ineffectual to create a lien, legal or equitable, in favor of the lessor for rents due and in arrears, on the crops grown thereafter on the leased premises."

In the *Brown* case the action was between the lessor and lessee, both of whom, at all times, had actual knowledge of the provisions of the lease. One reason suggested for this determination, advanced by Cobb, J., in *Cole v. Kerr*, 19 Neb. 553, and approved at page 773 in the *Brown* case, is: "Soil alone does not produce crops of corn in this degenerate age, if it ever did. It now requires in addition to soil, seed and labor, both of man and beast. So that the proposition that a sale or mortgage of a crop of corn not yet planted carries with it a property in or lien upon such crop, to attach and come into efficacy without 'a new intervening act,' upon the crops coming into existence, carries with it the proposition that a man may mortgage his labor to be performed—something which I never heard contended for in this country, but which is a right which, under the name of peonage, is recognized in our sister republic to the south of us." See, also, *Robinson v. Stricklin*, 73 Neb. 242.

In *Battle Creek Valley Bank v. First Nat. Bank of Madison*, 62 Neb. 825, it was held:

"An instrument which assumes to convey or encumber a thing not *in esse* is a mere executory contract, which does not, 'without a new intervening act,' create any legal right to, or interest in, the thing to which it relates.

"A provision in a mortgage of domestic animals, assuming to give the mortgagee a lien upon the increase to

be thereafter begotten, is nothing more than an agreement for a lien which, without possession, vests no legal right to, or interest in, such increase."

See, also, *State Bank of Gering v. Grover,* 110 Neb. 421.

It would seem obvious, under the foregoing authorities, that disabilities or limitations which inhere in, or are of the essence of, contracts which pertain to property not *in esse* are in no manner removed or remedied by legislation, the sole purpose of which is to charge third persons with constructive knowledge or notice of the existence of such contracts upon compliance with the provisons of such legislation.

As to the facts involved in the instant case, it may be said that on June 19, 1931, the tenant lessee gave a valid chattel mortgage to Davidson, defendant, to secure a $500 note. The tenant sold and delivered grain to the two grain companies. The purchase price of both deliveries amounted to $199.85. Both plaintiff Branz and Davidson asserted their respective liens against these purchasers, who paid the funds into court to abide the result of the suit. These purchasers were not chattel mortgagees, and, it is to be remembered, they were not within the purview of the restrictive words of the statute, "and protect the lessor against chattel mortgages given to other creditors by the lessee." Obviously, as one who purchases without constructive notice is presumed to be a purchaser without notice (*Rogers v. Pierce,* 12 Neb. 48), on this basis the lessor had no lien on the corn against these purchasers under the terms of the controlling statute, and constructive notice cannot be imputed to them. *American State Bank v. Keller,* 112 Neb. 761; *Weigand v. Hyde,* 109 Neb. 678; *State Bank of Gering v. Grover,* 110 Neb. 421.

It would seem the fair conclusion that the effect of the statutory language under consideration is but to make the chattel mortgagee the exception to the rule announced in the cases cited, which is otherwise continued in full force and effect. As to these purchasers it was

not filed for record. There is no question that the chattel mortgage given Davidson was valid at all times, and the prior filing of the same charged the purchasers with notice of it. The lessor must recover on the strength of his own title or lien against the purchasers of the corn in suit, and, if he fails, such failure cannot prejudice the subsequent chattel mortgagee as against the purchasers of the property covered by his mortgage.

But, waiving the effect of the situation above suggested, it may be said that security contracts have been the subject of legislative consideration, and legislation on this subject, though now comprised in a number of separate sections and provisions, constitutes a special subject, enacted for a special purpose, and evidencing a definite legislative policy.

Thus, in section 36-208, Comp. St. 1929, we have provisions governing when the vendor is secured by a sale upon condition; in section 36-301 we have covered the situation when security is furnished by the owner of the property in the form of a chattel mortgage. The legislative object and purpose in both is to provide security for the creditor party to this contract by a claim upon property involved. It is clear that the situation demands a similar rule of construction applicable alike to each of the sections in determining whether these respective provisions are to be deemed prospective or retrospective in their application.

In *Blunk Bros. v. Kelley*, 9 Neb. 441, after the adoption of what is now section 36-208, in a case in which a conditional contract entered into before the adoption of this legislation had not been filed as required by its terms, this court held the act inapplicable to contracts existing at the date of its passage. In delivering the opinion of this court, Maxwell, C. J., said, in part: "Has the statute changed the law as to contracts existing at the time of its passage? We think not. The contract in question was valid at the time it was entered into, and the title of the property in question did not pass to the vendee until pay-

ment of the amount due the plaintiffs. The legislature, in the passage of the act of 1877, did not attempt to apply the same to existing contracts."

Reading section 36-208 in connection with 36-301, as it existed before the amendment, in view of legislative policy and purpose evidenced, what possible reason can be suggested for the application of a different rule of construction as to the retroactive application of the statute involved in the case at bar.

We do not feel that we are going too far afield in thus construing sections 36-208 and 36-301 together. A statute will be read in connection with all other enactments upon that subject. *State v. Omaha Elevator Co.,* 75 Neb. 637; *Rohrer v. Hastings Brewing Co.,* 83 Neb. 111; *Chappell v. Lancaster County,* 84 Neb. 301; *Cram v. Chicago, B. & Q. R. Co.,* 84 Neb. 607.

Nor does it appear that the clause under consideration is to be given any different construction because of its subsequent adoption as an amendment. "The section of an act properly amended should be construed precisely as though it had been originally enacted in its amended form." *State v. Hevelone,* 92 Neb. 748.

If this present section 36-301 had been originally enacted as an entirety in 1866, would it suggest a retroactive construction in the light of the principles announced in *Blunk Bros. v. Kelley,* 9 Neb. 441? It would seem the contrary would be the inevitable conclusion.

Indeed, the general rule appears to be that, where an amendment leaves certain portions of the original act unchanged, such portions are continued in force with the same meaning and effect they had before the amendment. So, where an amendatory act provided that an existing statute should be amended to read as recited in the amendatory act, such portions of the existing law as are retained either literally or substantially are regarded as a continuation of the existing law and not a new enactment. 59 C. J. 1097.

"In accordance with the rule generally applicable to

legislative enactments, unless required in express terms or by clear implication, an amendatory act will be construed prospectively and not retrospectively, and the parts not altered are considered as having been the law from the time they were enacted. So also where a statute, or a portion thereof, is amended by setting forth the amended section in full, the provisions of the original statute that are repeated are to be considered as having been the law from the time they were first enacted, and the new provisions or the changed portions are. to be. understood as enacted at the time the amended act takes effect and not to have any retroactive operation." 59 C. J. 1181.

"(a) General Rule Applicable.—(1) The rule of statutory construction that the statute operates prospectively, unless its terms indicate a different intent, applies to an amendment. *Erie County v. Lowenstein,* 195 N. Y. Supp. 177, 202 App. Div. 579. (2) An amendatory act, like other legislative enactments, *takes effect only from its passage, and has no application to prior transactions* unless a contrary intent is expressed or clearly implied. *Riesen v. Riesen,* 105 N. J. Eq. 144; *In re St. Michael's Church of Atlantic City,* 76 N. J. Eq. 524.

"(b) Presumption.—There is a presumption that an amendment to a statute is prospective. *American Surety Co. of New York v. Alamo Iron Works* (Tex. Civ. App.) 29 S. W. (2d) 493 (rev. on other grounds (Commn. App.) 36 S. W. (2d) 714.)" 59 C. J. 1182, note 91 (a).

In this case the plaintiff must recover as against the purchasers of this corn in his own right or not at all. His contract ought not to be enlarged, by construction, to vest him with greater rights than those existing when the contract was actually entered into and made. It follows that the filing of the same, or a copy thereof, should not operate to vest him with any additional rights and powers that did not exist when he made the contract. To do so, it is admitted, would, in effect, impair the obligations of the contract in the constitutional sense of that term which would constitute a violation of the rights, not only of the

parties thereto, but also as to third parties who may be affected thereby.

The legislature did not attempt to apply the amendment of the chattel mortgage action (Comp. St. 1929, sec. 36-301) to existing contracts. The amendment was designed to affect only such contracts as were entered into after it took effect. *Blunk Bros. v. Kelley, supra.*

The judgment of the district court is

AFFIRMED.