STATE OF NEBRASKA, APPELLEE, V. CONNIE K. NISSEN, APPELLANT.

395 N.W.2d 560

Filed October 31, 1986.    No. 86-386.

William G. Line of Kerrigan, Line & Martin, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Hastings, J.

The defendant, Connie K. Nissen, appeals the district court's affirmance of a judgment of the county court for Dodge County finding her guilty of false reporting with intent to impede the investigation of an actual criminal matter. The county court imposed a sentence of 6 months' probation, which the district court affirmed. We also affirm.

On November 27, 1985, state trooper Gomez telephoned the Fremont Police Department and reported that a man named Vu Pham had just entered an apartment complex on West 9th and that there was an active warrant for his arrest. When Fremont police officer Burkhardt went to the apartment, several males and the defendant were present. Officer Burkhardt asked one of the men, Thu Van Le, whether Vu Pham was there. He said that Vu Pham was not at the apartment. Trooper Gomez then arrived and told Officer Burkhardt that Vu Pham had just walked in the back door.

The officer and the trooper proceeded into the apartment and asked Vu Pham if his name was Vu Pham, to which he replied, "No." They then asked the defendant if the person they believed to be Vu Pham was in fact him, and she said he was someone else. Thu Van Le then apparently became upset and ran into his bedroom and got a rifle. The officer cleared the apartment and then went outside to find Vu Pham, who had left the place where he was told to stay. Trooper Gomez came back to the defendant and asked her three times if the person they were looking for was Vu Pham. She denied that he was. After Trooper Gomez told her that she was in just as much trouble as Vu Pham was, she told him who Vu Pham was.

Officer Burkhardt testified he had told the defendant that he

had a warrant for Vu Pham's arrest. The officer also testified he was not sure who Vu Pham was. Trooper Gomez, on the other hand, said he knew all along Vu Pham was Vu Pham but assumed that he would have to have some sort of identification for Officer Burkhardt and the sheriff's office. Trooper Gomez also testified that if the defendant had told him who Vu Pham was initially, they would have just taken him and would have been gone and that the whole incident would have taken less time.

The defendant raises on appeal the single issue of whether the service of a misdemeanor warrant is an investigation of an actual criminal matter, so that the defendant's false statement as to the identity of the individual named in the warrant constitutes impeding the investigation of an actual criminal matter, proscribed by Neb. Rev. Stat. § 28-907(1)(a) (Reissue 1985).

In support of her contention that the service of a misdemeanor warrant is not an investigation of an actual criminal matter, the defendant relies solely on the construction of the words "actual criminal matter" found in *State v. Ewing*, 221 Neb. 462, 468, 378 N.W.2d 158, 162 (1985): "In using the words 'actual criminal matter,' the Legislature intended that law enforcement officers be required to prove the existence of *a legitimate and valid investigation of facts which could constitute a predicate offense* before a violation of the false reporting statute may stand." (Emphasis supplied.) Relying on that language, the defendant argues that when law enforcement officers are investigating a completed crime, the giving of the false information must impede an investigation of facts upon which the law enforcement officer could predicate another criminal offense before the provider of that false information can be convicted of violating § 28-907(1)(a). In this case the defendant argues that there was no further offense requiring investigation; the law enforcement officers were merely serving a misdemeanor warrant.

Although on its face the language quoted from *Ewing* does seem to support the defendant's contention, that language cannot be severed from the context of the facts in *Ewing* and blindly applied to the set of facts in this case.

In *Ewing* a police officer went to a trailer home with the mother of a 16-year-old girl to see if the girl was there. The mother had informed the officer that there was alcohol present in the trailer, that her daughter was smoking, and that she had been unable to remove her daughter from that environment. The officer went to the trailer, knocked, and asked the defendant if the girl was in the trailer house. The defendant responded that she was not there, that she had left. In fact, the girl was in the trailer and the defendant knew that. The girl was never arrested for any crime.

On appeal the defendant argued that in order for § 28-907(1)(a) to apply there must have been an actual crime committed of which the defendant's false information impeded the investigation. We determined that the term "actual criminal matter" was broader than "crime" and, thus, held that the giving of false information with the intent to impede the investigation of facts which could constitute a predicate offense was sufficient to trigger the application of the statute. It was not necessary for the State to prove that an actual crime was committed before someone could be convicted of false reporting. Because the officer reasonably believed a minor could be in possession of alcohol and someone could be contributing to the delinquency of a minor, the conviction of the defendant was affirmed.

Thus, in *Ewing* the words "actual criminal matter" were construed in response to the situation where a reasonable possibility existed that a crime was in progress. In this case we instead are confronted with a situation where some law enforcement officer had earlier had probable cause to believe that crimes had been committed so as to substantiate the issuance of arrest warrants. However, as a practical matter, no criminal investigation is complete until sufficient facts have been obtained to justify the arrest and conviction of the defendant.

Although not directly in point, in *Florida Freedom Newspapers, Inc. v. Dempsey*, 478 So. 2d 1128 (Fla. App. 1985), the Florida court, with reference to the definition of *criminal investigative information* as used in the Florida statutes relating to the exception of certain information from

the requirements of freedom of information statutes, went on to state that, in one respect, the law required criminal investigative information "to be furnished only after there has been an arrest or public charge made, such as the time, date, and location of the incident and *arrest* . . . ." (Emphasis supplied.) *Id*. at 1131.

Furthermore, as stated in *Wallner v. Fidelity & Deposit Co.*, 253 Wis. 66, 33 N.W.2d 215 (1948), the obligation of an officer making an arrest under a warrant is "twofold, to apprehend the person named in the warrant and to avoid interfering with one not involved." *Id*. at 69-70, 33 N.W.2d at 216.

We hold that the language of § 28-907(1)(a), "to impede the investigation of an actual criminal matter," includes the impeding of the gathering of information as to the identity of a defendant named in an arrest warrant. So as to avoid the possibility of false arrest suits, law enforcement officers have a legitimate right to question persons about the identity of the subject of an arrest warrant before they arrest the suspect. This is not to say that persons questioned may not have a right to refuse to answer such inquiry; but if they choose to answer, they may not give false information without subjecting themselves to criminal liability under § 28-907(1)(a).

The judgment of the district court is affirmed.

AFFIRMED.