State of Nebraska, appellee, v.
James R. Covey, appellant.
___ N.W.2d ___

Filed February 27, 2015.    No. S-14-241.

1. **Evidence: Appeal and Error.** When reviewing the sufficiency of the evidence
   to support a conviction, the relevant question for an appellate court is whether,
   after viewing the evidence in the light most favorable to the prosecution, any
   rational trier of fact could have found the essential elements of the crime beyond
   a reasonable doubt.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law,
   for which an appellate court has an obligation to reach an independent conclusion
   irrespective of the determination made by the court below.
3. **Statutes: Legislature: Presumptions: Intent: Appeal and Error.** An appellate
   court will, if possible, give effect to every word, clause, and sentence of a statute,
   since the Legislature is presumed to have intended every provision of a statute to
   have a meaning.
4. **Statutes.** Where an amendment leaves certain portions of the original act
   unchanged, such portions are continued in force with the same meaning and
   effect they had before the amendment.
5. **Words and Phrases: Presumptions.** The same words used in the same sentence
   are presumed to have the same meaning.

Appeal from the District Court for Buffalo County: John
P. Icenogle, Judge. Reversed and remanded with directions
to vacate.

D. Brandon Brinegar, Deputy Buffalo County Public
Defender, for appellant.

Jon Bruning, Attorney General, and Austin N. Relph for
appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack,
Miller-Lerman, and Cassel, JJ.

McCormack, J.
### NATURE OF CASE
This case presents the issue of whether a person can be
guilty of felony criminal impersonation under Neb. Rev. Stat.
§ 28-638(1)(c) (Cum. Supp. 2014) by uttering a false name
that does not correspond to any real individual.

## BACKGROUND

James R. Covey was charged with criminal impersonation in violation of § 28-638(1)(c). He was also charged with being a habitual criminal.[1]

Section 28-638(1)(c) states that a person commits the crime of "criminal impersonation" if he or she "[k]nowingly provides false personal identifying information or a false personal identification document to a court or a law enforcement officer[.]" Neb. Rev. Stat. § 28-636(2) (Cum. Supp. 2014), in turn, defines "[p]ersonal identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person including a person's: (a) Name; (b) date of birth; [et cetera]." "Person" or "specific person" are not defined.

At trial, Officer Brandon Brueggemann testified that on the afternoon of April 18, 2013, he was investigating a citizen report of a man possibly selling stolen goods out of the trunk of his vehicle. Brueggemann approached Covey at a convenience store, where he was standing near the trunk of a vehicle that matched the citizen's description. Brueggemann exited the cruiser and asked Covey some general questions.

In his police report, Brueggemann stated that from prior contacts, he recognized Covey as "James Covey." However, at trial, Brueggemann explained that he did not recognize Covey when he initially made contact.

Brueggemann testified that Covey falsely told Brueggemann that Covey's name was "Daniel Jones." Covey concurrently told Brueggemann Covey's correct birth date.

Brueggemann returned to his cruiser to run the name and birth date through his computer terminal. As he was doing so, Covey ran away. After a pursuit, Covey was apprehended and arrested. When booked, Covey identified himself truthfully as "James Covey."

There was no evidence at trial that the name "Daniel Jones" corresponded to an actual person, and the State did not argue that, as a matter of common sense, it must correspond to an actual person.

---

[1] See Neb. Rev. Stat. § 29-2221 (Reissue 2008).

Covey challenged the charge of criminal impersonation on the ground that it did not apply to the utterance of a name of a fictitious individual. Covey argued that the State could have instead charged him with false reporting under Neb. Rev. Stat. § 28-907 (Reissue 2008), because he had provided the false name in an attempt to avoid an arrest warrant. False reporting is a Class I misdemeanor.

The State argued that the existence of an actual person who was being impersonated was irrelevant to the charge of criminal impersonation. It asserted prosecutorial discretion in choosing to charge Covey with felony impersonation rather than misdemeanor false reporting.

The trial court agreed with the State and overruled Covey's plea in abatement and motion to dismiss the charge of criminal impersonation. The trial court also granted the State's motion in limine to prevent Covey from presenting any argument that he must have known he was using the name of an actual person in order to be guilty of criminal impersonation. After the trial, the jury found Covey guilty of criminal impersonation.

At the sentencing hearing, Covey objected to the admission of exhibits 2 through 7 on the ground that they had just been received by defense counsel. The court offered to continue the sentencing hearing, but Covey declined. The court overruled Covey's objections to the exhibits.

The court found that Covey was a habitual criminal and sentenced him to 10 to 14 years of incarceration. The court explained that it was sentencing Covey in such a way that he would have a period of supervised release on parole after his incarceration.

## ASSIGNMENTS OF ERROR

Covey assigns as error the overruling of his plea in abatement and the overruling of his motion to dismiss. Both of these assignments can be consolidated into his third assignment of error that there was insufficient evidence to support his conviction.

Covey also assigns as error the trial court's grant of the State's motion in limine and the overruling of Covey's

objection to exhibits 2 through 7 for purposes of enhancement. Finally, Covey asserts that the court imposed an excessive sentence.

## STANDARD OF REVIEW

[1] When reviewing the sufficiency of the evidence to support a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

[2] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.[3]

## ANALYSIS

Covey argues that the evidence was insufficient to convict him of criminal impersonation under § 28-638(1)(c), because there was no evidence that the false name he provided to the law enforcement officer corresponded to any actual person.

Section 28-638(1)(c) is one of several subsections pertaining to the "crime of criminal impersonation." Section 28-638(1) states that "[a] person commits the crime of criminal impersonation if he or she:" (a) pretends to be a representative of some person or organization with the intent to gain pecuniary benefit and to deceive or harm another; (b) carries on any profession, business, or other occupation without a license, certificate, or other legally required authorization; (c) knowingly provides false personal identifying information or a false personal identification document to a court or a law enforcement officer; or (d) knowingly provides false personal identifying information or a false personal identification document to an employer for the purpose of obtaining employment.

Impersonation under § 28-638(1)(a) and (b) is a felony or a misdemeanor, depending upon the value gained or attempted to

---

[2] *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012).

[3] *Hess v. State*, 287 Neb. 559, 843 N.W.2d 648 (2014).

be gained by the impersonator.[4] Impersonation under subsection (1)(d) is always a misdemeanor.[5] But impersonation under subsection (1)(c), the statute Covey was charged with violating, is always a felony.[6]

Section 28-636(1) defines a "[p]ersonal identification document" as

> a birth certificate, motor vehicle operator's license, state identification card, . . . or passport or any document made or altered in a manner that it purports to have been made on behalf of or issued to *another person* or by the authority of *a person* who did not give that authority.

(Emphasis supplied.)

Section 28-636(2), which is most directly at issue in this case, defines "[p]ersonal identifying information" as

> *any name or number* that *may be used*, alone or in conjunction with any other information, *to identify a specific person* including *a person's: (a) Name*; (b) date of birth; (c) address; (d) motor vehicle operator's license number or state identification card number as assigned by the State of Nebraska or another state; (e) social security number or visa work permit number; [et cetera].

(Emphasis supplied.)

We must determine whether, under § 28-636(2), the "person's" name or number can be a fictitious "person's" name or number, which "may be used . . . to identify a specific [fictitious] person," or, instead, whether the State must show that the defendant provided the name or number of a real person, which name or number "may be used, alone or in conjunction with any other information, to identify a specific [real] person." We conclude that under the plain language of these statutes, a person commits felony impersonation only by giving law enforcement the personal identifying information of a specific and real individual. To the extent that there could be any reasonable disagreement about the plain meaning of the

---

[4] See § 28-636(2)(a) through (d).

[5] See § 28-638(2)(f).

[6] See § 28-638(2)(e).

relevant impersonation statutes, they are ambiguous. As such, we must follow our rules of construction and the rule of lenity, which will lead us to the same result.

"Person" is not defined in the definitions section of chapter 28, article 6, of the Nebraska Revised Statutes, which sets forth the "offenses involving fraud" and which contains the impersonation statutes. However, Neb. Rev. Stat. § 28-109 (Reissue 2008), found in article 1 of the criminal code, states: "For purposes of the Nebraska Criminal Code, unless the context otherwise requires: . . . (16) Person shall mean any natural person and where relevant a corporation or an unincorporated association." The impersonation statutes, of course, are part of the criminal code.

The definition of "person" found in § 28-109(16) makes clear that the "person"/"specific person" in § 28-636(2) cannot be a fictitious person. Black's Law Dictionary states that a "natural person" is "[a] human being, as distinguished from an artificial person created by law."[7] We believe that a "natural person" excludes imaginary, artificial, or fictitious persons. If it did not, then all kinds of crimes could be committed against fictitious "persons." We find no reason why the context of the impersonation statutes would "require" that we understand "person" any differently.

To the extent it might be argued that the definition of "person" as a "natural person" is not decisive, we note the dictionary definition of a "person" as "a human being regarded as an individual."[8] "Specific," in turn, is "clearly defined or identified."[9] While the dictionary definition of "person" does not explicitly state that the "human being" is real rather than fictitious, things capable of being real are not normally understood by default as encompassing the fictitious, unless the context so indicates. Rather, the default understanding of a word used in the context of a real-world application is that the word refers to real things in that real world. We believe

---

[7] Black's Law Dictionary 1162 (7th ed. 1999).

[8] Concise Oxford American Dictionary 660 (2006).

[9] *Id.* at 869.

that in the context of § 28-636(2), "person" plainly means a real person.

Cases from other jurisdictions considering similar impersonation statutes support this conclusion that "person" is plainly limited to real and specifically identifiable human beings. For example, 18 U.S.C. § 1028(a)(7) (2012) provides that under specified circumstances, it is a crime to knowingly transfer, possess, or use, without lawful authority, a means of identification "of another person." Section 1028(d)(7), in turn, defines "means of identification" in language practically identical to § 28-636(2)'s definition of "[p]ersonal identifying information." It defines "means of identification" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." It then lists several of the same examples as § 28-636(2): name, date of birth, address, driver's license or identification number, Social Security or work permit number, et cetera.

Federal courts have consistently held that the "means of identification" described in 18 U.S.C. § 1028(d)(7) must identify an actual person who is not the defendant.[10] In fact, the U.S. Supreme Court, in *Flores-Figueroa v. United States*,[11] held that the language of 18 U.S.C. § 1028A(a)(1) (2012), which is identical in relevant part to 18 U.S.C. § 1028(a)(7), requires that the government prove the defendant knew that the means of identification at issue corresponded to an actual person.

Further, federal courts hold that a non-unique identifier, such as a name, will not alone qualify as a "means of identification," when that identifier points to numerous equally plausible, actual persons, as opposed to one specific, real individual.[12] For example, in *U.S. v. Mitchell*,[13] the court held that the definition of "'means of identification of another person'" as "'any name or number that may be used, alone

---

[10] See *Flores-Figueroa v. United States*, 556 U.S. 646, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009).

[11] *Id*.

[12] See, e.g., *U.S. v. Foster*, 740 F.3d 1202 (8th Cir. 2014); *U.S. v. Mitchell*, 518 F.3d 230 (4th Cir. 2008).

[13] *U.S. v. Mitchell, supra* note 12, 518 F.3d at 234 (emphasis in original).

or in conjunction with any other information, to identify a *specific individual*'" was plain and clarified that 18 U.S.C. § 1028(d)(7) requires that the "means of identification" entail a sufficient amount of correct, distinguishing information to identify a specific, real person. The court then explained that, in most circumstances, a non-unique identifier, such as a name or date of birth, will not be sufficient to identify a specific person.[14]

State courts likewise conclude in the context of various impersonation statutes that the "person" impersonated must be a real person. Several state courts have accordingly held that giving a police officer the wrong name, without proof the name corresponded to a real individual, is insufficient to support a charge of impersonation.[15]

Many state impersonation statutes are worded in terms of impersonating "another," which is understood as "another person," similar to the federal statutes. "Another" in this context has been held to mean holding oneself out as a specific, actual individual who is someone other than oneself.[16]

*State v. Woodfall*[17] illustrates the strength of courts' plain reading of terms like "another," "other person," and "person," as excluding fictitious entities. In *Woodfall*, the court was presented with the definition of "'personal information'" as "'information associated with *an actual person or a fictitious person*.'"[18] Yet, the court still found the statutory scheme ambiguous. The court interpreted the definition of "personal

---

[14] *Id*.

[15] See, *Lee v. Superior Court*, 22 Cal. 4th 41, 989 P.2d 1277, 91 Cal. Rptr. 2d 509 (2000); *State v. Jackson*, 32 Conn. App. 724, 630 A.2d 164 (1993); *Brown v. State*, 225 Ga. App. 750, 484 S.E.2d 795 (1997); *City of Liberal v. Vargas*, 28 Kan. App. 2d 867, 24 P.3d 155 (2001); *People v. Gaissert*, 75 Misc. 2d 478, 348 N.Y.S.2d 82 (1973); *State v. Berry*, 129 Wash. App. 59, 117 P.3d 1162 (2005).

[16] *People v. Danisi*, 113 Misc. 2d 753, 449 N.Y.S.2d 874 (1982); *People v. Gaissert, supra* note 15. See, also, *People v. Sherman*, 116 Misc. 2d 109, 455 N.Y.S.2d 528 (1982).

[17] *State v. Woodfall*, 120 Haw. 387, 206 P.3d 841 (2009).

[18] *Id*. at 393, 206 P.3d at 847 (emphasis supplied).

information" in favor of the defendant and concluded it was limited to impersonation of real persons. The court explained that the inclusion of "fictitious persons" in the definition of "personal information" conflicted with other provisions. The definition of "personal information" operated in conjunction with the underlying statute setting forth the offense of "'transmission of any personal information of another.'"[19] And the term "'another,'" the court noted, was defined by a different statute as "'any other person.'"[20] The court also noted that "'person'" was defined by a general statute applicable to the criminal code as "'any natural person.'"[21]

[3] We do not see any meaningful distinction between the terms "another" and "person" under the statutes from other jurisdictions addressed above and the use of "person"/"specific person" in § 28-636(2). Furthermore, we note that § 28-638 expressly uses the term "impersonation" as part of the body of the statute. This is not merely a label placed by the Nebraska Revisor of Statutes. As such, the word "impersonation" should be given credence like any other. We will, if possible, give effect to every word, clause, and sentence of a statute, since the Legislature is presumed to have intended every provision of a statute to have a meaning.[22] And one dictionary definition of "impersonation" is to pretend to be "another person."[23] The cases discussed above support our view of the plain meaning of §§ 28-638(1)(c) and 28-636(2).

At a minimum, we would be hard pressed to conclude that "person" in the context of §§ 28-638(1)(c) and 28-636(2) is not ambiguous as to whether it includes or excludes fictitious persons. Ambiguity is defined as being capable of more than one reasonable interpretation,[24] and we certainly view these other courts' decisions as reasonable.

---

[19] *Id.* at 391, 206 P.3d at 845.

[20] *Id.* at 392, 206 P.3d at 846.

[21] *Id.*

[22] See *Sorensen v. Meyer*, 220 Neb. 457, 370 N.W.2d 173 (1985).

[23] Black's Law Dictionary, *supra* note 7 at 757.

[24] See *In re Interest of Erick M.*, 284 Neb. 340, 820 N.W.2d 639 (2012).

In the face of ambiguity, we must examine legislative history and abide by the rule of lenity. Doing so, we are led to the same conclusion: that to commit the felony crime of impersonation by presenting "false personal identifying information" to a law enforcement officer, there must be an actual individual being "impersonated" by such "personal identifying information."

We first observe the history of the impersonation legislation. The definition of "personal identifying information" remained unchanged during the most recent amendment to the impersonation statutes, which was 2009 Neb. Laws, L.B. 155. The same definition of "personal identifying information" was previously found in Neb. Rev. Stat. § 28-608(4)(b) (Reissue 2008), and that definition tied into § 28-608(1)(d)(i). Section 28-608(1)(d)(i) stated that a person "commits the crime of criminal impersonation" if he or she, "[w]ithout the authorization or permission of another and with the intent to deceive or harm another," "[o]btains or records personal identification documents or personal identifying information[.]"

Thus, in the context of the impersonation statutes before the passage of L.B. 155, the "person" identified by the "personal identifying information" was very clearly a real person, as distinguished from a fictitious person. The "personal identifying information" was of "another," who was capable of giving authorization or permission, and who was capable of being harmed by the unauthorized use of the personal identifying information. Moreover, using the "personal identifying information" of another, in violation of § 28-608(1)(d)(i), was distinguishable from impersonation through "[a]ssum[ing] a false identity" or acting in an "assumed character," in violation of § 28-608(1)(a). Before L.B. 155, all the kinds of impersonation were a misdemeanor or a felony, depending on the harm caused.

[4] Where an amendment leaves certain portions of the original act unchanged, such portions are continued in

force with the same meaning and effect they had before the amendment.[25] Thus, the unchanged definition of "personal identifying information" is presumed to continue to be understood as the name or number of a real, not a fictitious, specific person.

We find no evidence from the legislative history that the Legislature intended to change the meaning of "personal identifying information" when it passed L.B. 155. The legislative history indicates only that L.B. 155 added the category of presenting "false identifying information" to a police officer, and made every such instance a felony regardless of the harm caused, because "persons who commit these crimes are not always looking for a financial gain."[26] The Judiciary Committee explained that it was attempting to close the "gaps that *victims* fall through currently. Criminals use *personal information* for many reasons other than financial gain, including to commit crimes, evading arrest, or undocumented workers use this information to be employed in this country."[27]

Also, we interpret criminal statutes together so as to maintain a consistent and sensible scheme.[28] In this regard, we observe that criminal impersonation via false personal identifying information, both before and after L.B. 155, has always been distinguishable from the separate misdemeanor offense of "false reporting" found in our criminal code. Section 28-907(1)(a) states that a person commits "false reporting" if he or she "[f]urnishes material information he or she knows to be false to any peace officer or other official with the intent to instigate an investigation of an alleged criminal matter or to impede the investigation of an actual criminal matter." We have held that

---

[25] *Branz v. Hutchinson*, 128 Neb. 698, 260 N.W. 198 (1935).

[26] Floor Debate, L.B. 155, Judiciary Committee, 101st Leg., 1st Sess. 84 (May 7, 2009).

[27] Judiciary Committee Hearing, L.B. 155, 101st Leg., 1st Sess. 50 (Jan. 28, 2009) (emphasis supplied).

[28] See *Sack v. State*, 259 Neb. 463, 610 N.W.2d 385 (2000).

the crime of "false reporting" includes giving a false name to avoid an arrest warrant.[29]

It would be an odd criminal scheme if giving a false name to a police officer, without any additional intent, could be a felony under § 28-638(1)(c), while the same act with the additional element of intending to impede an investigation is only a misdemeanor.

Finally, we must abide by the rule of lenity. Under the rule of lenity, ambiguities in a penal statute are resolved in the defendant's favor.[30] The rule of lenity serves important interests. It promotes fair notice to those subject to the criminal laws, minimizes the risk of selective or arbitrary enforcement, and maintains the proper balance between Congress, prosecutors, and the courts.[31] The rule of lenity requires that we interpret "person," as used in §§ 28-638(1)(c) and 28-636(2), to encompass only real, specifically identifiable, human beings.

The State and the dissent argue §§ 28-638(1)(c) and 28-636(2) unambiguously give fair notice to those subject to our criminal laws that it is felony "criminal impersonation" to provide a false name or number to a police officer—whether or not such false name or number constitutes identifying information for any real individual. The State argues that the "specific person" referred to in § 28-636(2) is the defendant and not some other, specific, real person. The State accordingly reads "to identify a specific person" as meaning "to identify oneself." We disagree.

[5] The "personal identifying information" will not be "false" if the "specific person" identified by the name or number is the same "person's" name or number given to the law enforcement officer. Therefore, the State's argument runs afoul

---

[29] See *State v. Nissen*, 224 Neb. 60, 395 N.W.2d 560 (1986).

[30] See, *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014); *State v. Thacker*, 286 Neb. 16, 834 N.W.2d 597 (2013).

[31] See, e.g., *United States v. Kozminski*, 487 U.S. 931, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988).

of the rule of construction that the same words used in the same sentence are presumed to have the same meaning.[32]

Furthermore, if the Legislature had intended the meaning the State champions, there are certainly clearer ways it could have conveyed that meaning. "[A] specific person" in § 28-636(2) is an oddly oblique way for the Legislature to have chosen to simply say "oneself."

And, finally, the State's argument as to whom "specific person" refers does not address the meaning of the second instance of "person" in § 28-636(2): "including a person's: (1) Name; (b) date of birth; (c) address; [et cetera]."

The dissent, for its part, focuses on the use of the term "may" in the same phrase from § 28-636(2) that the State focuses on: "Personal identifying information means any name or number that may be used, alone or in conjunction with any other information, to identify a specific person . . . ." The dissent argues that § 28-636(2) plainly states that the "[p]ersonal identifying information" may or may not identify a real human being. In making this argument, the dissent relies on cases holding that "may" connotes permissive or discretionary action.

The dissent's argument, like the State's, does not address the second instance of "person" in the statute. In any event, the cases the dissent relies upon are inapplicable. The statutes analyzed in those cases use "may" to describe an action by an actor. For example, we have held that "may" connotes discretionary action when used in statutes specifying that "'the court may set aside a final judgment'"[33] or "may allow the

---

[32] See, *Brown v. Gardner*, 513 U.S. 115, 115 S. Ct. 552, 130 L. Ed. 2d 462 (1994); *Philippides v. Bernard*, 151 Wash. 2d 376, 88 P.3d 939 (2004). See, also, e.g., *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006); *Lewis v. Philip Morris Inc.*, 355 F.3d 515 (6th Cir. 2004); *C.R. Klewin Northeast v. City of Bridgeport*, 282 Conn. 54, 919 A.2d 1002 (2007); *Jasper Contractors, Inc. v. E-Claim.com*, 94 So. 3d 123 (La. App. 2012). See, also, 2A Norman J. Singer, Statutes and Statutory Construction § 46:06 (5th ed. 1992).

[33] *Alisha C. v Jeremy C.*, 283 Neb. 340, 349, 808 N.W.2d 875, 883 (2012).

prevailing party . . . a reasonable attorney's fee."[34] In contrast, "may" as found in § 28-636(2) is in a passive phrase utilized for an abstract definition. "May" modifies the "name or number" "that may be used." A name or number cannot act or have "discretion."

We read "may" in § 28-636(2) as "being capable of." One dictionary definition describes "may" as "have the ability . . . to."[35] Thus, to be "personal identifying information," that information must have the ability to identify a "specific person." We believe that to be the most sensible reading of the statute.

In sum, the State and the dissent assert that the relevant language pertaining to felony impersonation by presenting "false personal identifying information" to a court or law enforcement officer is just a complicated way of describing giving a false name or number—of a kind that could, but not necessarily does, identify a specific real person.

But we do not think it makes sense to refer to a fictitious "specific person" or a name, address, state identification card number, et cetera, of a fictitious person. To the extent it could be a sensible reading, we certainly do not think it the only one. There is a difference between a fictitious name or number and a fictitious person[36]; thus, we cannot agree with the State and the dissent's view that one essentially collapses into the other.

For the foregoing reasons, Covey is correct that the evidence was insufficient to support the crime charged. There was no evidence the name "Daniel Jones" belonged to a real Daniel Jones, much less to any "specific" Daniel Jones. Such a showing would not have been necessary had the State charged Covey with the misdemeanor offense of false reporting under

---

[34] *Manning v. Dakota Cty. Sch. Dist.*, 279 Neb. 740, 746, 782 N.W.2d 1, 7 (2010).

[35] See Webster's Third New International Dictionary of the English Language, Unabridged 1396 (1993).

[36] *Santiago v. E.W. Bliss Co.*, 2012 IL 111792, 973 N.E.2d 858, 362 Ill. Dec. 462 (2012) (Karmeier, J., specially concurring).

§ 28-907(1)(a). If the Legislature wishes to criminalize as a felony giving a police officer a false name, address, date of birth, et cetera—whether or not that name or number is capable of identifying any specific individual in the real world—then it may amend § 28-636(2) to clearly express that intent. Until then, we must read § 28-636(2) as limiting "personal identifying information" to those names or numbers capable of identifying specific and real human beings.

## CONCLUSION

We reverse, and remand the cause with directions to vacate Covey's conviction. We need not address Covey's remaining assignments of error.

Reversed and remanded with
directions to vacate.

Cassel, J., dissenting.

The majority acknowledges that a clear and unambiguous statute requires no interpretation,[1] but it undertakes a tortured analysis to discover ambiguity. Here, the meaning of the statute[2] is clear.

The elements of the crime do not require identification of a real person. A person commits the crime of criminal impersonation if he or she "[k]nowingly provides false personal identifying information . . . to . . . a law enforcement officer[.]"[3] Thus, other than date of commission and venue, there are only two elements: (1) that the accused provided false personal identifying information to a law enforcement officer and (2) that he or she did so knowingly. There is no requirement that the false personal identifying information relate to a real person.

Likewise, the definition of "personal identifying information" contains no such requirement. "Personal identifying information" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify

---

[1] See *State v. Suhr*, 207 Neb. 553, 300 N.W.2d 25 (1980).

[2] Neb. Rev. Stat. § 28-638(1)(c) (Cum. Supp. 2014).

[3] *Id*.

a specific person."[4] The majority defines "person" as "a human being regarded as an individual"[5] and "specific" as "clearly defined or identified."[6] And the majority acknowledges that none of these terms are explicitly limited to real, as opposed to imaginary, "human beings." However, rather than stopping there, it then reads the term "real" into the statute.

I would refrain from this unnecessary interpretation of an unambiguous statute. Although the rule of lenity requires a court to resolve ambiguities in a penal code in the defendant's favor, the touchstone of the rule of lenity is statutory ambiguity, and where the legislative language is clear, a court may not manufacture ambiguity in order to defeat that intent.[7] The statute provides a clear definition: Personal identifying information is a name or number that may be used, alone or in conjunction with additional information, to identify a definite or identifiable individual.[8] And when the word "may" is used in a statute, permissive or discretionary action is presumed.[9] Here, the word "may" means the personal identifying information provided is *capable* of identifying a definite or identifiable individual, not that the information provided *must* identify a definite or identifiable individual.

And Covey knowingly gave such false information to law enforcement. He identified himself as "Daniel Jones," a name that may be used to identify a particular individual, which he knew to be false. There was no proof that Daniel Jones was a real person. But the ability of a name to identify a definite or particular individual is not premised upon the existence of an actual person with that name.

The majority conflates the name of the crime with the crime's statutory elements. "Criminal impersonation" is merely

---

[4] Neb. Rev. Stat. § 28-636(2) (Cum. Supp. 2014).

[5] Concise Oxford American Dictionary 660 (2006).

[6] *Id.* at 869.

[7] *State v. Dinslage*, 280 Neb. 659, 789 N.W.2d 29 (2010).

[8] See § 28-636(2).

[9] *JCB Enters. v. Nebraska Liq. Cont. Comm.*, 275 Neb. 797, 749 N.W.2d 873 (2008); *In re Trust Created by Isvik*, 274 Neb. 525, 741 N.W.2d 638 (2007).

the name of the offense, as designated by the Legislature.[10] The name of the crime does not change or affect its elements. And those elements control our review. When reviewing the sufficiency of the evidence to support a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[11] Here, both elements of the crime were clearly established. And that should be the end of our inquiry.

I would affirm Covey's conviction. Therefore, I respectfully dissent.

HEAVICAN, C.J., and STEPHAN, J., join in this dissent.

---

[10] See § 28-638(1)(c).

[11] *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012).

---

FIRST TENNESSEE BANK NATIONAL ASSOCIATION,
SUCCESSOR BY MERGER TO FIRST HORIZON
HOME LOAN CORPORATION, APPELLANT,
v. JASON NEWHAM, APPELLEE.

___ N.W.2d ___

Filed February 27, 2015.    No. S-14-326.

1. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3. **Jurisdiction: Appeal and Error.** It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4. **Summary Judgment: Evidence: Proof.** After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.