IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MEAD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MITCHELL R. MEAD, APPELLANT.

Filed January 31, 2017.    No. A-16-458.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Mark Porto, of Shamberg, Wolf, McDermott & Depue, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

INBODY, Judge.

## INTRODUCTION

On September 29, 2015, Mitchell R. Mead was charged by information with one count of criminal impersonation. After a jury trial in the Hall County District Court, Mead was convicted and sentenced. Mead then filed this timely appeal, assigning error by the district court for denying his motion for a directed verdict and abuse of discretion by prohibiting law enforcement testimony about whether Mead committed the crime of criminal impersonation or false reporting.

## STATEMENT OF FACTS

At trial, Grand Island Police Officer Mitchell Meyer testified that on June 6, 2015, at around 2:30 a.m. he was in his patrol vehicle driving southbound on Sycamore Street near Third Street in Grand Island, Nebraska, proceeding into an underpass. As Officer Meyer entered the underpass, he observed Mead on a skateboard, shirtless, in the middle of the street moving forward down the descent of the street toward the underpass. Officer Meyer observed Mead wobble, then

fall off his skateboard, continuing to slide down the underpass on his left shoulder for 15 to 20 feet. Officer Meyer stopped his patrol vehicle, activating his rear overhead lights to let Mead know he intended to make contact. Officer Meyer was concerned for Mead's health and safety based on Mead's sliding on a significant amount of concrete without a shirt on, in addition to Mead's violation of Grand Island City Code § 22-60 prohibiting the use of a skateboard on a city street. Officer Meyer observed Mead's shoulder and lower side were bleeding significantly.

When Officer Meyer approached and asked Mead if he was okay, Mead told Officer Meyer he was okay and then Mead asked Officer Meyer if he was being detained. In response, Officer Meyer told Mead he needed to speak with him because of the city code violation. Officer Meyer observed Mead to appear slightly disoriented and Mead continued to ask Officer Meyer several times if he was being detained, while contemporaneously stating he was okay.

Officer Meyer asked Mead for his name and, in response, Mead said his name was "Grant Gregory" and that his birth date was February 5, 1998. When Officer Meyer heard Mead's response, he knew Mead was not being truthful because he had several previous law enforcement contacts with Gregory. Officer Meyer contacted the emergency patrol center by radio, providing them the name of "Grant Gregory" and a birth date of February 5, 1998, but there was not a match based on the information provided. Officer Meyer then informed Mead that he knew Gregory from prior contacts and that he knew Mead was not Gregory. In response, Mead stated, "all right, you've got me, I am not Grant Gregory." Officer Meyer then asked for Mead's name and Mead stated his name was "Mitchell Mead."

At trial, while cross-examining Officer Meyer, Mead's counsel attempted to ask Officer Meyer if he understood the distinction between the elements for the crimes of false reporting and criminal impersonation, but the State objected on the basis that the question called for a legal conclusion and the district court sustained the objection. Mead's counsel then told the district court he wanted to make an offer of proof to the objection and the State again objected on the basis that the questions called for a legal conclusion. The district court allowed Mead's counsel to proceed with the offer of proof, with the stipulation that the State made a continuing objection to questions involving Officer Meyer's knowledge and elements of the statutes and for what crimes he referred Mead to the county attorney's office. At the conclusion of Mead's counsel's offer of proof, the district court continued to sustain the objection.

Gregory also testified at trial, stating he knew Mead and that Mead was an "old school friend." Gregory stated he and Mead went to the same elementary, middle, and high school. Gregory indicated he and Mead had a close friendship in elementary school, that the friendship was not as close in middle school, and that in high school the friendship "faded away" because of different interests. Gregory also stated the last time he spoke with Mead was about 1½ to 2 years prior.

At the completion of the State's case in chief, Mead moved for a directed verdict. The district court overruled Mead's motion for a directed verdict. The jury found Mead guilty of criminal impersonation and Mead was subsequently sentenced to a term of probation for 12 months.

## ASSIGNMENTS OF ERROR

On appeal, Mead's assignments of error, consolidated and restated, are that the district court erred by denying his motion for directed verdict and abused its discretion by prohibiting Officer Meyer from testifying about whether Mead committed the crime of criminal impersonation or false reporting.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*.

## ANALYSIS

### MOTION FOR DIRECTED VERDICT

Mead contends the district court erred in refusing to grant his motion for a directed verdict. He contends that, pursuant to *State v. Covey*, 290 Neb. 257, 859 N.W.2d 558 (2015), the State had to show that Mead gave law enforcement false personal identifying information and that the false personal identifying information he provided was "intended to be that of a specific and identifiable individual." Brief for appellant at 8.

"A person commits the crime of criminal impersonation if he or she . . . [k]nowingly provides false personal identifying information . . . to a . . . law enforcement officer[.]" Neb. Rev. Stat. § 28-638(1)(c) (Cum. Supp. 2014). "Personal identifying information means any name or number that may be used, *alone* or in conjunction with any other information, to identify a specific person including a person's: (a) Name; (b) date of birth; [et cetera]." Neb. Rev. Stat. § 28-636(3) (Cum. Supp. 2014) (emphasis added).

Mead's argument relies heavily on the Nebraska Supreme Court's decision, *State v. Covey*, *supra*. In *Covey*, *supra*, a law enforcement officer was investigating the report of a man potentially selling stolen goods from his vehicle's trunk. *Id*. The man was later identified as James Covey. *Id*. The officer approached Covey, asking him some general questions, and Covey told the officer his name was "Daniel Jones," while concurrently telling the officer Covey's actual birth date. *Id*. The officer returned to his cruiser to use the computer terminal to run the name and birth date, but Covey ran away while the officer was in his cruiser. *Id*. Covey was eventually arrested and, when

booked, identified himself as "James Covey." *Id*. Covey was convicted at the trial level of felony criminal impersonation. *Id*.

In its analysis, the Supreme Court established that under the plain language of the statutes, "a person commits felony impersonation only by giving law enforcement the personal identifying information of a specific and real individual." *Id*. at 261, 859 N.W.2d at 562. Moreover, the Court determined that "[t]o commit the felony crime of impersonation by presenting 'false personal identifying information' to a law enforcement officer, there must be an actual individual being 'impersonated' by such 'personal identifying information.'" *Id*. at 266, 859 N.W.2d at 565. The Court concluded there was insufficient evidence to support Covey's felony criminal impersonation conviction because, despite providing the officer a false name, there was no evidence at trial that the name belonged to any real and specific "Daniel Jones." *Id*.

Similar to *Covey*, *supra*, in this instance, Mead knowingly provided Officer Meyer with a false name of "Grant Gregory," with his actual birth date. When Officer Meyer called the emergency patrol center to give them the name and birth date, there was no match. Officer Meyer confronted Mead, telling Mead that he knew Gregory and knew that Mead was not Gregory, to which Mead said "all right, you've got me, I am not Grant Gregory" and informed Officer Meyer his real name was Mitchell Mead.

However, unlike *Covey*, *supra*, where there was no evidence at trial that the false name "Daniel Jones" corresponded to an actual person, Mead gave law enforcement the personal identifying information of a specific and real individual, Grant Gregory. At trial, the State called Gregory, who testified that Mead was an "old school friend." Gregory testified he knew Mead since grade school and that the two attended elementary, middle, and high school together. Gregory stated the two had a close friendship in elementary school, but found different interests and were not as close throughout middle and high school and had not seen each other in 1½ to 2 years. The evidence provided by the State indicates Mead knew, and also at one time had a close friendship with, Gregory and that Gregory was a specific and real individual.

We determine that Mead's assignment of error is without merit and that the district court did not err in refusing to grant Mead's motion for a directed verdict.

OFFICER MEYER'S TESTIMONY

Mead also claims the district court abused its discretion when it did not allow him to obtain testimony regarding whether Officer Meyer believed Mead committed the crime of false reporting or criminal impersonation. Mead contends that because Officer Meyer was the only eyewitness of the events and had knowledge of the requirements for different crimes, Officer Meyer's interpretation of whether Mead provided "false information" or "false identifying information of a specific and identifiable person" was relevant. Brief for appellant at 8.

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Neb. Rev. Stat. § 27-704 (Reissue 2008). However, if the witness is testifying as a lay witness, rather than as an expert, the opinion testimony is only permissible if it is rationally based on the perception of the witness and it is helpful to a clear understanding of his or her testimony or the determination of a fact in issue. See Neb. Rev. Stat. § 27-701 (Reissue 2008). Such opinion testimony by a lay witness is "generally

admissible where it is necessary and advisable as an aid to the jury, but it should be excluded whenever the point is reached at which the trier of fact is being told that which it is itself entirely equipped to determine." *State v. Kozisek*, 22 Neb. App. 805, 814, 861 N.W.2d 465, 474 (2015), citing *State v. William*, 231 Neb. 84, 435 N.W.2d 174 (1989). The function of a lay witness is to describe what he or she observed to the trier of fact, and "the trier of fact will draw a conclusion from the facts observed and reproduced by the witness." *Id.*

The district court correctly prohibited Officer Meyer from testifying about his belief of whether Mead committed the crime of false reporting or criminal impersonation, and whether he understood the distinction between the crimes of false reporting and criminal impersonation, because such testimony would have told the jury, as the trier of fact, that which it was itself entirely equipped to determine. Although Officer Meyer could testify as to the events he observed to the trier of fact, he could not testify as to the ultimate issue for the finder of fact. Officer Meyer's belief regarding whether Mead committed the crime of false reporting or criminal impersonation was irrelevant and would have inappropriately decided the issue for the jury.

We find the district court did not abuse its discretion by not allowing Mead to obtain testimony from Officer Meyer regarding his belief of whether he believed Mead committed the crime of false reporting or criminal impersonation.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.